## THE STATE *vs.* RANDOLPH.

24 363
74 430

The offence of being a common prostitute, referred to in the fifty-third section of the third chapter of the act concerning prisons, (Rev. Stat. Tit. 4, Ch. 3, § 53,) is not an infamous crime.

The record of the conviction of such offence is not admissible on the trial of a cause, for the purpose of impeaching a witness who has testified.

The proper enquiry to be made of an impeaching witness considered.

THIS was an indictment against the prisoner, Isaac Randolph, for murder.

The cause was tried at New Haven, before the superior court, October term, 1855.

On the trial, Maria Tuttle and Delia Sayres were offered as material witnesses, and testified in behalf of the state. For the purpose of affecting their credibility, the defendant offered in evidence a record of a court holden by a justice of the peace, for the county of New Haven, showing that they were convicted of being common prostitutes, under the fifty-third section of the third chapter of the act concerning prisons. To this evidence, the attorney for the state objected, and the court sustained the objection, and excluded the evidence. The jury having found the prisoner guilty, he moved for a new trial, on the ground of the decision of the judge above stated.

*Keese*, in support of the motion.

The enquiry, on an impeachment óf the witness, should not be restricted to his character for truth and veracity, (although this is the true and primary enquiry,) but the general standing of the witness in the community is properly a subject for investigation. *Hume* v. *Scott*, 3. A. K. Marshall, 1 Hill So. Car. Rep., 251, 8, 9. *State* v. *Boswell*, 2 Dev. Law Rep., 209–10. Green. Ev., Vol. 1, § 461, note. *People* v. *Mather*, 4 Wend., 257–8.

2. Evidence, therefore, that a female witness has been convicted of being a common prostitute, is admissible for the purpose of affecting her credibility, upon general principles. *Commonwealth* v. *Murphy*, 14 Mass. R., 387. 2 Stark. Ev., 369, note (1.)

*Foster*, (state attorney,) against the motion.

At common law, the credit of a witness can be impeached, by general evidence only, and not by evidence as to particular facts. 1 Stark. Ev., 181. Sw. Ev., 143. 1 Green., 599, § 461, 601, note. Rosc. Cr. Ev., 76, 181. *Philips* v. *Kingsfield*, 1 App., 375. *State* v. *Bruce*, 11 Shep., 71. 13 Johns., 504. *Morse* v. *Pinneo*, 4 Verm., 281. *State* v. *Smith*, 7 Verm., 141. *Spears* v. *Forrest*, 15 Verm., 435. *U. S.* v. *Van Sickle*, 2 McLean, 219–325. 6 Black. 1. 4 Watts, 380.

The provision in the statute (Rev. Stat. Tit. 43, Ch. 3, § 5,) does not reach this case. That simply renders competent such as, by reason of conviction of infamous crime, were incompetent to testify in a court of justice. The provision that the conviction of the witness may be shown in evidence, applies only to that class of crimes, which rendered the witness infamous in law. This is not such a crime. At common law, the only felonies were murder, manslaughter, treason, arson, burglary, robbery, rape, sodomy, mayhem, larceny. 1 Hale, 703. 1 Hawk., Ch. 40–52. 1 Greenl. Ev., 492, § 373.

The State *v.* Randolph.

Ellsworth, J. By a certain statute law of the state, it is provided, that sturdy beggars, vagabonds, vagrants, night-walkers, and, among others, drunkards and common prostitutes, may be sentenced to the work-house for a period, not exceeding sixty days. Maria Tuttle and Delia Sayres, being witnesses, and having testified against the prisoner, his counsel offered in evidence a copy of the record of a judgment, by justice Bennet, of their conviction, under the statute, as common prostitutes, and claimed to read it, for the purpose of discrediting their evidence. The court refused the offer, and it is this refusal, which gives rise to the present question.

It was faintly contended by the prisoner's counsel, that the offence of the witness was an infamous crime, *crimen falsi*, at the common law, and so, at the common law, the witness should be excluded entirely from testifying, and as, by our recent statute, no infamous offence would entirely disqualify the witness, the record of his conviction must be received, to go to his credit. It is not perfectly clear, what offences fall within the class of *crimen falsi*, but a sufficient approximation to a general rule has been established, to perceive, that the offences, mentioned in the statute above recited, do not come within any rule hitherto recognised by our courts. In Green. Ev., vol. 1, § 373, it is said, that persons are infamous, who have been convicted of forgery, perjury, subornation of perjury, suppression of testimony by bribery, or conspiracy to procure the absence of a witness, or to accuse one of a crime or barratry. So far the courts have gone, and from these decisions it may be deduced, that the *crimen falsi* of the common law not only involves the charge of falsehood, but also is one, which may injuriously affect the administration of justice, by the introduction of falsehood and fraud. In *Utley* v. *Merrick*, 11 Met., 302, the court held that a conviction for obtaining goods by false pretences, would not disqualify a witness. In 2 Steph. N. P. 1721, 2, there is an enumeration of many offences, conviction of which, renders a

witness incompetent, and some of which do not, but neither there, nor elsewhere, do we find that licentiousness in either sex is *crimen falsi.* Publishing a malicious libel is not; *Charters* v. *Hawkins,* 3 Lev., 426; nor is bigamy, Bul. N. P. 292; nor is conspiracy to defraud, *Ville de Varsovie,* Dods. R., 274. *Crowther* v. *Hopwood,* 3 Stark. R., 21, nor would be; by parity of reasoning, gambling, or horse-racing, or drunkenness, or profanity, or the like. The same rule is laid down in Phil. Ev., 211. Peak. Ev., 134, 2 Stark. Ev., 715, and other books.

Now, in order to attack the character of a witness, who is admissible at the common law, and who testifies in the cause, it is universally agreed, you cannot go into particular facts, but must enquire after character; for every man is supposed to be able to support his general character, though he may not be able, without motive, to disprove, or explain every fact that may, at the moment, be brought against him; and such collateral issues too, would greatly embarrass the progress of the trial. According to this rule, the record in question could not have been received, for it does not go to reputation at all, but to a simple fact, the licentiousness of the witness; nor is the conviction founded on reputation, but on proof of the fact, as in other cases of crimes. Certainly, had there been no conviction, evidence of the facts, upon which the conviction was obtained, would not be admissible, and why then the record, since character is the only thing to be enquired after.

Another subject has been discussed, respecting which there is a diversity in the practice of the courts of justice. We mean, the proper question to be put to a witness, who is called to impeach the character of another witness. One thing however is obvious, that in all courts, whatever be the form or extent, of the enquiry, the thing aimed at is one and the same, the character of the witness for truth; and where the question assumes a more general form, it is allowed only for its supposed bearing on the truthfulness, or the reverse, of

the witness; his character for truth is all that is pertinent and material to the point, and all that the jury should enquire after; other facts, other offences, tried or untried, not being *crimen falsi*, have no bearing upon the enquiry whatever, and should not be brought into the case. In the English courts, the enquiry is in this form; " are you acquainted with the character of the witness ?—what is his general character ?—would you believe him under oath ? As a general rule of practice this has been found satisfactory in that country, and elsewhere, and doubtless would be so here, if our courts had not, at an early period, adopted a different rule, which has proved to be satisfactory and sufficient, and which we are not willing, at this late day, to abandon for another, certainly not better, if as good. The more general enquiry in England is adopted, as we have said, to learn the witness' character for truth; ours is adopted for the same purpose, but is more single and direct. In our courts, the enquiry put is, " is the character of the witness for truth on a par with that of mankind in general?" The English rule has this advantage, that it brings the general character of the witness before the triers, which is important, where the witness has not acquired a specific character on the subject of truth, and hence it is urged, with some force, that, in such a case, the general enquiry is essential, for no other will reach the case; and further, that testimony of the impeaching witness, that, from his acquaintance with the witness' character, he would, or would not, believe the witness under oath, will throw light on the credit, and standing of the witness. We do not deny that there is much good sense in this course of reasoning, but on the other hand, our rule, proceeding upon the same idea, goes to the question of truth at once, nor does it leave anything to the mere inference of the impeaching witness, whether he would, or not, believe the witness under oath. By our rule, he states the premises, or character for truth, from which he draws the conclusion, and as, in other cases, leaves the triers to draw their own inferences. And it is

further said that the opinion of an individual is not always the safest rule of judgment for others, as it may have been formed under sinister influence, and may take its character from the peculiar notions, or prejudices of the witness himself. On the whole, both rules are well enough, and have proved satisfactory, wherever they have prevailed.

In Green. Ev., § 461, it is said that " the regular mode of enquiring into the general reputation, is to enquire of the witness, whether he knows the general reputation of the witness in question among his neighbors; what that reputation is; and whether, from such knowledge, the witness would believe the person upon his oath. In answer to such evidence, the other party can cross-examine the witnesses, as to their means of knowledge and the ground of their opinion. The English rule as thus laid down by Greenleaf, has been practiced upon in several of the states of the union, while in others a more restricted and specific one has been preferred. Cow. note 531, in Phil. Ev., 293. This entire subject has been so often discussed in our courts, and is so familiar to the profession from our earliest practice, that we forbear to dwell longer on the topic. Our enquiry is, " are you acquainted with the character of the witness ?"—if the witness says yes, then the further enquiry is put, " is his character for truth and veracity equal to that of mankind in general ?" These may be followed by proper cross-questions, to test the witness' means of knowledge and his accuracy and honesty. Beyond these enquiries, as questions in chief, our courts have not had occasion to proceed, and whether we ought to go further, and allow the English questions to be put to the witness, has not been decided, certainly not in this court, although we believe it has often been done on the circuit. General bad character is undoubtedly a serious blemish in a witness, and might justly detract from the weight of his testimony, and so might the character of a witness for the specific blemish of licentiousness, especially in the female sex. But where shall we stop the enquiries ? Witnesses, who can

have no opportunity to exculpate themselves, or give explanations of their acts, ought not to be exposed to unjust obloquy, nor should the trial be complicated and prolonged by trying collateral issues. If it were wise and just to enquire for one's reputation for virtue, why not for gambling, horse-racing, drunkenness, sabbath breaking, &c.? These are serious blemishes on character. Now the general enquiry in the English courts, and the more limited one in ours, is free from the objections to specific acts, or the character of specific habits, which, if allowed to be proved, would be very uncertain in effect, for they would be differently estimated and viewed by the triers, and hence, general character, which every witness is supposed to be able to establish, whenever attacked, is held to be all that is necessary or proper. For a more full and satisfactory discussion of these questions, we refer to an elaborate opinion of McLean, J., in *United States* v. *Vansickles*, 2 McLean R., 223. See likewise *Peo.* v. *Herrick*, 13 Johns., 84. *Hume* v. *Scott*, 3 Marsh., 260. Sw. Ev., 1. *Spear* v *Forrest*, 15 Verm., 435. 6 Black., 1. *Commonwealth* v. *Murphy*, 14 Mass. R., 387. In the latter case, the supreme court of Massachusetts held, that it might be shown, a witness was the mother of several bastard children, and a common prostitute, but this decision is essentially impaired by a subsequent decision of the same court. *Commonwealth* v. *Moore*, 3 Pick., 196, and is at variance with the entire current of authorities in this country, and in England.

We do not advise a new trial.

In this opinion, the other Judges, STORRS & HINMAN, concurred.

New trial not granted.