## DANIEL DORE vs. FREDERICK W. BABCOCK.

Third Judicial District, Bridgeport, Oct. Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The plaintiff, a retail store-keeper, alleged and claimed to have proved
that while the defendant, a vendor of oil from tank-wagons, was
filling an oil tank in the former's store, he unnecessarily used a
lighted candle in so negligent a way as to set fire to the oil and burn
up the store and its contents. The jury returned a verdict for the
defendant and the plaintiff appealed. It was substantially agreed
upon the trial that the defendant's servant asked for a light or a
candle, that the plaintiff's clerk gave him a candle without any
candlestick or other support, and that the defendant's servant then
lit it and used it as he saw fit. No claim was made that a lighted
candle, if properly secured and placed, could not have been safely
used, nor that the use of such a light for such a purpose was negli-
gence per se. Held that under these circumstances the important
question in the case, so far as the claim of contributory negligence
was concerned, was not whether the candle furnished was a safe or
an unsafe light, but whether the plaintiff had anything to do with
the mode or manner of its use by the defendant by which alone it
became, if at all, unsafe and dangerous; and that upon this point
the charge of the trial court, while not absolutely silent, was ob-
scure, insufficient and misleading.

The plaintiff's clerk having testified fully as to the occurrences at and
before the fire, and as to the manner of delivering and receiving
oil, was asked upon cross-examination whether oil was sold from
the store tank in the evening, and whether he had been instructed
by the plaintiff not to make such sales. Held that these inquiries
were relevant and germane to the direct examination.

After this witness had been cross-examined as to why and for what
purpose he had given the candle to the defendant's servant, he was
asked on redirect whether at the time he furnished the candle he
expected or supposed it would be placed by such servant upon the
frame of the oil can. Upon objection this question was excluded.
Held that in view of the defendant's claim that the clerk knew and
consented to the use that was to be made of the candle, the inquiry
should have been permitted.

Two carpenters and builders testified as experts for the plaintiff con-
cerning the damage done by the fire, and as to the kind of an ex-
amination they had made. Held that inasmuch as it did not appear
from the record that they were qualified to give an opinion as to
how and where the fire originated, an inquiry as to that on their

Dore v. Babcock.

redirect examination was properly excluded; even if opinion evidence upon that subject was admissible at all.

Servants of the defendant testified that they had delivered oil to the plaintiff at divers times before the fire and had been given candles to use, and that this was known to and acquiesced in by the plaintiff. *Held* that this evidence was properly received to contradict the plaintiff and his wife, to show the necessity for a light, and that the plaintiff himself had instituted this practice.

Upon the plaintiff's cross-examination the defendant was permitted to show that the property burned was insured, for what amount, and how much had been paid; but only to show the interest of the witness in the result of the suit. *Held* that under the circumstances disclosed on the record its admission for this purpose only, was not erroneous.

Argued October 25th—decided November 28th, 1899.

ACTION to recover damages for negligently setting on fire and burning the plaintiff's store and contents, brought to the Superior Court in New Haven County and tried to the jury before *Shumway, J.;* verdict and judgment for the defendant, and appeal by the plaintiff for alleged errors in the rulings and charge of the court. *Error and new trial granted.*

The complaint, *inter alia*, alleged in substance the following facts: The defendant, at the time alleged in the complaint, entered the store of the plaintiff to fill the tank in said store with kerosene oil. The tank was in the cellar of the building and was connected with a pan on the floor above by a pipe, and in filling the tank the oil was poured into the pan. The defendant in bringing the oil into the store unnecessarily and negligently used and placed a lighted candle, without a candlestick or other sufficient support, so near to said pan that it, by his negligence, set fire to the oil in the pan and in the tank, and this set fire to the building, greatly injuring the same and destroying the plaintiff's household furniture and merchandise contained therein. The defense was a general denial.

The evidence tended to prove the following facts, about which there was little or no dispute: The plaintiff kept a retail store and sold therein kerosene oil at retail, and the defendant sold kerosene oil at wholesale and delivered the same from tank-wagons to retail dealers.

In the cellar of the plaintiff's store was an oil tank capable of holding 180 gallons, connected with a pan above, as set forth in the complaint. For two or three years before the fire in question the plaintiff had bought kerosene oil from the defendant, whose servants were accustomed to deliver it into the tank by carrying it in pails from the tank-wagon and pouring it into the pan and so into the tank. On the day of the fire the tank was empty and plaintiff had asked the defendant to fill it. At about noon that day Higgins, a servant of the defendant, brought his tank-wagon to the plaintiff's store to fill the tank as usual. The plaintiff was absent from the store at this time, and the store was in charge of his wife and a clerk, Edward McEnroe, about seventeen years old. Higgins asked McEnroe for a candle and a match, and McEnroe handed him a candle and showed him where he could find a match. Higgins took a match and with it lighted the candle, and then went towards the oil pan. He placed three bundles of kiln dried wood about three or four feet away from the pan, making a pile about nine inches high, and upon this he set the candle, affixing it to the wood by melted grease. He then made three trips from his wagon to the store, carrying ten gallons of oil each trip, and poured the oil into the pan and so into the tank. On his fourth trip, before he reached the pan, fire was discovered in its neighborhood and he was thereby obliged to carry his oil cans immediately out of the store, and before he reached the street the store suddenly filled with smoke and flame, and as he reached the sidewalk there was an explosion, bursting out the glass in front of the store, and the inside of the store was all on fire.

Upon the evidence given in the case the plaintiff claimed that it tended to prove the following facts: that the place where the oil pan was situated was sufficiently light on pleasant days, and on the day of the fire, to enable one to pour oil into the pan without the aid of artificial light; that such light was unnecessary except upon dark or cloudy days; that the day of the fire was fine and clear; that there was a gas jet in the center of the store, nearly opposite the alcove where

Dore v. Babcock.

the oil pan was, which could be lighted at any time; that plaintiff had provided a lantern to be used upon cloudy days in pouring oil into the pan; and that the plaintiff had never permitted nor sanctioned the use of a lighted candle by the defendant's servants when delivering oil into the tank.

The defendant claimed, on the other hand, that evidence in the case tended to prove these facts: that the place where the pan was situated was so badly lighted upon dark days that it was impossible to pour oil into the pan without spilling it over the floor, unless artificial light was used there; that the plaintiff had cautioned the defendant's servants not to spill oil on the floor; that to avoid spilling the oil the defendant's servants had asked the plaintiff and his servants for candles to be used, lighted, in and about the pan when pouring oil, and candles had been, at all times when necessary, furnished by the plaintiff and his servants, and used there with their knowledge, permission and sanction, substantially as upon the day of the fire; and that the day of the fire was dark and cloudy, rendering the use of artificial light necessary in filling the tank.

Upon the evidence thus introduced the defendant claimed that it not only tended to prove that he was not negligent, but also to prove that the plaintiff was guilty of contributory negligence.

The plaintiff, among other things, asked the court to charge, in substance, that the giving of the candle by McEnroe to Higgins, under the circumstances detailed in evidence, did not of itself constitute contributory negligence. Upon this point the court, after saying to the jury that contributory negligence on the part of the plaintiff, if proved, would defeat his right to recover, even if the defendant's negligence caused the fire, in divers parts of the charge said this, in substance: If you find that the place where the pan was situated was not sufficiently well lighted to enable the defendant's servants to pour the oil properly, without the aid of artificial light, and the defendant had the right to expect that the plaintiff would furnish such a light as might by the use of ordinary care be safely used there, and the plaintiff furnished

a light which was unsafe to be used there by one using or-
dinary care, it is for you to say whether this was negligence
of the plaintiff in furnishing a light clearly unsafe in the
hands of one using ordinary care.  " Was the light, a candle
without a candlestick, a reasonably safe light?  If not, it will
be for you to say whether the furnishing of the candle caused
or contributed to the plaintiff's loss and injury.  If you find
under all the circumstances that it was the duty of the plain-
tiff and not the defendant to furnish a light at the time and
place in question, then clearly the defendant should not be
held responsible or liable for any damages resulting from the
furnishing of a light not reasonably safe, or for the negligent
or improper use of any light furnished by the plaintiff's ser-
vant, unless such negligent or improper use alone was the
sole cause of the plaintiff's loss or damage."   In furnishing
an artificial light, if one was necessary, the plaintiff did not
assume all risk of loss that might arise from its use, " for it
will appear to you that it was possible for any person pur-
posely to throw a perfectly safe light furnished him under
those circumstances into the oil, and thus cause a conflagra-
tion.  In that case it would clearly be the negligent act of
the person using the candle.  But if a light was necessary,
it was the plaintiff's duty, if he provided any light at all, to
furnish a reasonably safe light; and it was the defendant's
duty to use the light in an ordinarily careful and prudent
manner.  If the light was reasonably safe, and the defend-
ant's negligence alone caused the injury, the plaintiff should
be compensated for his loss.  But if the light was not rea-
sonably safe, and because the light was dangerous which was
furnished to defendant's servant, and defendant's servant
used it with ordinary care and prudence, and the loss and
injury was caused by the unsafe and dangerous light fur-
nished by the plaintiff or his servants, then the plaintiff should
not recover.  Or if the plaintiff's loss and injury was the
result of the unsafe light furnished by the plaintiff's servant,
combined with the careless use and handling of it by the
defendant's servant, then the plaintiff cannot recover, and
your verdict should be for the defendant.   Whether it was

the plaintiff's duty or not to supply a light, in my opinion . . . it was his duty to provide a reasonably safe one under all the circumstances ; and if he failed so to provide a safe light, and that, combined with the negligent act of the defendant's servant, caused the loss or injury, then the plaintiff should not recover. . . .

"The giving of a candle to Higgins may not be contributory negligence in itself, because I have already called your attention to the fact that you are to determine as a question of fact whether a candle was a reasonably safe light to provide under the circumstances."

The court stated one of the defendant's claims as follows: "They say that the use of a candle by Higgins in the manner in which it was placed, three feet away and supported upon three blocks of kindling wood, at a distance from the oil, is not of itself a negligent act; that if the candle caused the conflagration and the subsequent loss, it was the result of using the lighted candle, the only light which was furnished him at that time, and which the plaintiff undertook to furnish, and which was not safe in itself, was dangerous, and was the cause of the injury." And to this the court added: "Of course, whether the light was safe, whether the candle was safe, or not, under all the circumstances is a question of fact."

During the trial McEnroe, a witness for the plaintiff, testified fully as to the condition of the store at the time of the fire, as to the occurrence of the fire, as to the use of a light at the pan when putting oil into the tank, and as to the manner of doing business in receiving and delivering oil into and from the tank. Upon cross-examination he was asked, in substance, whether oil was sold from the tank in the evening, and whether he had been instructed by the plaintiff not to make any such sales. The plaintiff objected to these questions and the court overruled the objection.

Upon his cross-examination McEnroe was inquired of at considerable length as to why he gave the candle to Higgins, and the purpose for which Higgins wanted it; and he said he gave it because Higgins asked for it, that he understood

Higgins wanted it to light his way to the pan, and supposed Higgins was big enough and old enough to know what he had the candle there for. On the redirect plaintiff's counsel asked McEnroe this question: "When you gave Higgins the candle which he lighted in the manner you have stated, did you or not expect that he was to place it upon the frame of the oil can in the manner in which he did?" The defendant objected to this question and the court sustained the objection.

The plaintiff had testified generally as to the occurrence of the fire, the condition of his property, the value of his merchandise and furniture, his loss by the fire, and other matters. On cross-examination he was asked whether his property was insured on the day of the fire. The plaintiff objected to this, but upon the court's saying that if admissible at all, the proposed evidence was admissible only as bearing upon the question whether the plaintiff had or had not an interest in the result of the suit, and not upon the question of damages, withdrew the objection. The plaintiff answered, "Yes, sir." He was then asked, "For how much?" He answered the question. He was then asked, "Have you been paid the insurance?" He answered, "A part of it." He was then asked, "How much?" He stated the amount. The plaintiff objected to these last three questions and answers, and the court overruled the objection.

Two witnesses, Leonard and Conlan, carpenters and builders, testified for the plaintiff as experts concerning the amount of damage caused to the plaintiff's building by the fire, and testified fully as to the kind of examination they had made. On cross-examination they testified as to what parts of the building were most burned, where the fire had apparently been hottest, where most damage had been done, and in what it consisted. On the redirect the plaintiff proposed to ask them if they had formed any opinion as to how or in what part of the premises the fire originated. Defendant objected to this and the objection was sustained.

The defendant called three witnesses, Ahern, Robinson and Stoddard, who testified that they, as servants of the de-

fendant, had, at divers times prior to the fire, delivered oil at the plaintiff's store, that candles had been furnished to them from time to time by the plaintiff and his servants, to be used lighted in the neighborhood of the oil pan, and that this use of candles had been known to and acquiesced in by the plaintiff long before the fire. The plaintiff objected to this evidence, on the ground that other acts of negligence on the part of the plaintiff at other times could not be used as evidence of contributory negligence on his part on the day of the fire. The court excluded it for this purpose, but held that it was admissible to contradict the plaintiff and his wife as to the use of candles in this way, "to show the plaintiff's conduct in respect to the necessity of a light around the oil pan," and to show that plaintiff himself "had instituted the practice of furnishing a lighted candle without any stick" for use at this oil pan.

On the cross-examination of the witness Ahern, plaintiff's counsel asked this question : "Did you at one time deliver for Mr. Babcock 'Funk Oil,' so-called, sent in barrels from New York?" Defendant objected to this and the court excluded it, on the ground that it was not germane to the direct examination. To all of these adverse rulings upon evidence the plaintiff duly excepted.

The reasons of appeal, thirty-three in number, are all based upon claimed errors in the charge, and the foregoing rulings upon the evidence.

*James H. Webb* and *Arnon A. Alling*, for the appellant (plaintiff).

*William H. Williams* and *Charles S. Hamilton*, for the appellee (defendant).

TORRANCE, J. One of the important questions in the trial court was whether the plaintiff had been guilty of such negligence as essentially contributed to the loss he sustained by reason of the fire. The defendant claimed that the plaintiff had been guilty of such negligence. This claim was based chiefly upon the fact that the plaintiff, by his clerk, had fur-

nished to the defendant's servant a candle for his use in pouring the oil into the pan.    The evidence upon both sides bearing upon this point was substantially the same, and to this effect: Higgins, as he claimed, asked the plaintiff's clerk to give him a light to use in pouring the oil into the pan.    The clerk claimed that Higgins asked for a candle, and that he gave him a candle without any candlestick, or other thing in which to set it, and told him where he could find a match with which to light it.    Higgins then and there lit the candle and, with it so lighted, went towards the pan in which he was to pour the oil, and without any directions or suggestions from the clerk placed it how and where he saw fit.    Concerning these facts the parties were in substantial agreement.

As to whether any artificial light at all was necessary, on the day of the fire, in pouring oil into the pan, the parties were not in agreement, and the evidence on that point was conflicting.

No claim was made on the trial below that a lighted candle, if properly placed and fastened, could not have been used with safety in pouring oil into the pan, nor that it was in itself a careless act to use a naked lighted candle there at all, under any circumstances, while pouring oil into the pan.

The plaintiff claimed, in effect, that the evidence in the case tended to show that if he did anything at all upon which the defendant's claim of contributory negligence could be based, it was simply the furnishing of a candle to the defendant's servant, at his request, and for his purposes, to be used by him as he saw fit in his master's business; and the plaintiff, in effect, asked the court to instruct the jury that if they found the facts upon this matter to be as claimed, he was not guilty of negligence, because he had furnished a safe light if properly used.    We are of opinion that the plaintiff was entitled to have the jury so instructed, and that the charge upon this point was insufficient and on the whole tended to mislead them.

Upon the evidence in the case, about which there was no dispute, the candle furnished to Higgins was an ordinary candle, not at all an unsafe or dangerous light in and of itself.

If unsafe or dangerous at all on the occasion in question, it was made so by the mode and manner of its use by Higgins, and the plaintiff claimed that Higgins in what he did in this matter was not his servant. Under these circumstances the important question, bearing upon the claimed contributory negligence of the plaintiff, was not whether the candle furnished to Higgins was a safe or an unsafe light, but whether the plaintiff, in what it was claimed he did in this matter, had anything to do with that which made the light an unsafe and dangerous one, namely, the conduct of Higgins in using it as he did; and the main error in the charge consists we think in the fact that the court emphasized the first of these questions and said little or nothing about the second. The jury were told to consider and determine this question: "Was the light, a candle without a candlestick, a reasonably safe light?" If not, they were told "it will be for you to say whether the furnishing of the candle caused or contributed to the plaintiff's loss and injury." They were told repeatedly in divers parts of the charge, that it was for them to determine whether the light furnished by the plaintiff was a reasonably safe light, and that if the light so furnished was not a reasonably safe light, and the loss resulted from that cause, the plaintiff could not recover. They were told that "whether it was the plaintiff's duty or not to supply a light, in my opinion if he undertook, either by himself or his agent, to provide a light, it was his duty to provide a reasonably safe one under all the circumstances; and if he failed to so provide a safe light, and that, combined with the negligent act of the defendant's servant, caused the loss or injury, then the plaintiff should not recover." They were thus told, in effect, and that, too, more than once, that if the plaintiff furnished a candle he was responsible for the negligent use of it by one who in what he did with the light was acting as the servant and agent of the defendant; for it must be borne in mind that the plaintiff's request to charge upon this point was based on his claim upon the evidence, that in what Higgins did with the light after he got it he was acting as the servant and agent of the defendant.

VOL. LXXII—27

It is true that in another part of the charge the court said : "I say to you the giving of a candle to Higgins may not be contributory negligence in itself, because I have already called your attention to the fact that you are to determine as a question of fact whether a candle was a reasonably safe light to provide under the circumstances. If it was a reasonably safe light to provide under the circumstances, and a light was necessary, then of course there was no negligence or want of ordinary care upon the part of McEnroe which could be attributed to his master." But we do not think this instruction, nor anything else said by the court in other parts of the charge, cured the error in question here. It left the jury to determine, as a question of fact, whether "the candle was a reasonably safe light under the circumstances," without calling their attention to the "circumstances," and without telling them that if they found that Higgins, in what he did with the candle, was the defendant's servant, the plaintiff was not responsible for that part of the "circumstances" made up of Higgins' conduct after he got the candle.

It is true, also, that in another part of the charge the jury were told, in effect, that it was the plaintiff's duty if he provided any light at all to furnish a reasonably safe light, and it was the defendant's duty to use the light in an ordinary careful manner, and that if the plaintiff provided a safe light, and the defendant's carelessness alone caused the injury, the plaintiff could recover ; but this was almost immediately followed by that part of the charge already quoted, wherein the jury were told in effect that if the plaintiff failed to furnish a safe light "under all the circumstances," and such failure "combined with the negligent act" of Higgins, caused the loss, the plaintiff could not recover. The former statement in the charge was thus neutralized by the latter, and nowhere in the charge are the jury squarely and fully instructed, as they should have been, that the plaintiff, if his claims on the evidence were found true, was not responsible for Higgins' improper and negligent use of the candle after he obtained it from McEnroe.

Looking at the entire charge, in the light of the evidence

in the case and the claims made by the parties upon the question of contributory negligence, we think the court failed to bring to the attention of the jury the important fact that unless Higgins, in what he did with the light, was the plaintiff's servant, the plaintiff was not responsible for Higgins' negligence. For this reason there must be a new trial.

In this view of the case it becomes unnecessary to consider the other alleged errors in the charge; but such of the questions of evidence covered by the assignments as are likely to come up on a new trial remain to be considered. Most of the exceptions to the rulings upon evidence are unimportant and require no lengthy discussion. It is questionable whether any of them, with perhaps one exception, even if wrong, would furnish sufficient ground for a new trial.

The rulings upon the questions asked McEnroe upon the cross-examination were correct. The questions were relevant and germane to the matters brought out on the direct.

So, too, the rulings made with reference to the questions put to Leonard and Conlan, the builders, appear to have been correct. As we understand the record, which is not at all clear on this point, the questions asked of these witnesses which were excluded, were asked with the view of having them testify as experts, as to how and where the fire originated. They had testified fully as to what they observed upon these points, it was not claimed that they were experts upon the origin of the fire, and thus they do not appear to have been qualified to give an opinion on this point, even if opinion evidence upon such a point is admissible, a question on which we express no opinion.

The testimony of Robinson, Ahern, and Stoddard, as to the use of lights at this oil pan, with the knowledge and consent of the plaintiff and his servants, at other times than the one in question, was clearly admissible for the limited purposes for which the court admitted it.

The question asked of Ahern on cross-examination, concerning the delivery of "Funk Oil," was properly excluded, as not germane to the direct examination.

Under the circumstances disclosed by the record, we think there was no error in admitting the evidence with reference to the payment of the insurance money. Further than this, upon this point, we have no occasion at present to decide.

McEnroe was asked, in effect, whether or not he expected or supposed when he gave Higgins the candle, that Higgins would place it and use it as he did. The defendant claimed that McEnroe in what he did was acting for the plaintiff, and knew or had reason to know just what use would be made of the candle and how it would be placed by Higgins, and therefore in effect consented to such improper use, if it was such. In view of this claim we think the court erred in excluding the question. McEnroe, under the circumstances, was entitled to show that he did not know or expect that it would be used as it was used. This disposes of all the errors assigned with reference to the rulings upon evidence.

There is error and a new trial is granted.

In this opinion the other judges concurred.