## DANIEL DORE *vs.* FREDERICK W. BABCOCK.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

While the defendant was delivering oil in the plaintiff's store the building caught fire and was consumed with its contents. The pivotal issue between the parties was whether *H*, an employee of the defendant, while placing and using a lighted candle near the pan into which he was pouring the oil, was, in respect to these acts, the servant of the plaintiff or of the defendant. The defendant claimed that an artificial light was necessary at the pan ; that it was the plaintiff's duty to furnish such light ; and that when, in response to *H's* request for such a light the plaintiff's clerk produced a candle and match and gave them to *H*, the plaintiff thereby recognized his duty to provide a light and impliedly authorized *H* to use the candle as he did. *Held* that the jury should have been instructed specifically that if all these claims of fact were established, then *H*, in placing and lighting the candle, was, as matter of law, the servant of the plaintiff ; and that general instructions as to the liability of a master for the acts of his servant, although correct, were not sufficient for the guidance of the jury under the peculiar circumstances of the case.

Evidence that the wife of a witness had obtained a divorce from him on the ground of his desertion and total neglect of marital duty, does not tend to prove any such general bad moral character as would or ought to affect his reputation for veracity, and is therefore inadmissible to discredit him.

The admission of irrelevant evidence for the purpose of discrediting a material and important witness, especially when the jury are instructed by the court that they are to consider such evidence as tending to discredit him, is reversible error.

Argued November 15th, 1901—decided January 9th, 1902.

ACTION to recover damages for negligence in setting fire to and burning the plaintiff's store and dwelling-house, and their contents, brought to the Superior Court in New Haven County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment for the plaintiff for $9,178, and appeal by the defendant for alleged errors in the rulings and charge of the court. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*Charles S. Hamilton* and *Edward A. Harriman*, for the appellant (defendant).

*James H. Webb* and *Arnon A. Alling*, for the appellee (plaintiff).

TORRANCE, C. J.   The new trial heretofore granted on the plaintiff's appeal in this cause (72 Conn. 408) resulted in a verdict and judgment for the plaintiff; and the defendant now appeals for alleged errors of the trial court in its rulings and in its charge to the jury.   The evidence produced by both sides on this second trial was substantially the same as that produced by them on the first trial; and the substance of it is so fully stated in the report of this case in the 72d Conn. that it is unnecessary to restate here anything more than the substance of some of the facts found upon the record.

Upon the second trial, as upon the first, the defendant claimed to have proved that upon the day of the fire the place in plaintiff's store where the oil was to be poured by Higgins, the defendant's servant, into the pan connecting with the tank, was so dark that an artificial light was necessary there ; while the plaintiff claimed to have proved that no such light was necessary.

The defendant, upon this trial as well as upon the other, claimed to have proved the following facts, in substance, with reference to the use of the candle which it was claimed caused the fire: that Higgins on the day of the fire asked the plaintiff's servant, McEnroe, for a light to be used at the pan, to enable Higgins to pour the oil therein properly; that McEnroe furnished Higgins with a candle to be used for that purpose, and a match to light it; and that Higgins placed three bundles of kiln dried wood on the floor about three or four feet from the pan and piled them up, making a base about nine inches high, on which he placed the lighted candle, affixing it thereto by grease melted and allowed to harden.

One of the important questions, indeed the pivotal ques-

tion, in the case below, was whether Higgins, in so placing and using the candle in this way was, as to these acts, the servant of the defendant or the servant of the plaintiff; and one of the things of which the defendant now complains is the charge of the court upon this question. He claims in substance that the charge upon this point was not sufficient for the guidance of the jury in determining this important point in the case. More precisely, the complaint is that the court failed to say to the jury, in any effective way, that if Higgins, in lighting and placing the candle as and where he did, was doing something by the plaintiff's consent which it was the duty of the plaintiff to do, he was in what he so did the servant of the plaintiff and not of the defendant.

We think this complaint is well-founded. The defendant claimed that the evidence tended to show (1) that an artificial light was necessary at the pan; (2) that it was the duty of the plaintiff to furnish such light there; and (3) that when the defendant through Higgins asked for such light there, the plaintiff through McEnroe as his servant and agent, recognizing his duty to furnish it, began the performance of that duty and thereby impliedly authorized Higgins to complete it. This claim was fairly supported by the evidence as the defendant claimed it to be.

Was McEnroe authorized to act for the plaintiff and as his servant for the purpose of furnishing the necessary light? Did the plaintiff recognize his duty to furnish that light? Did McEnroe in his behalf begin the performance of that duty by handing a candle to Higgins for Higgins to use in completing the performance of the plaintiff's duty by using the candle, as the plaintiff's agent, to light the place where the oil was to be poured into the pan?

These were material questions of fact for the jury to decide. If they were all answered by the jury in the affirmative, then the law was that Higgins in lighting and placing the candle was the servant of the plaintiff, and not of the defendant, and the jury should have been so instructed.

The court instructed the jury correctly enough as to the "general rules of law governing the liability of employers

for the acts of their servants or agents "; they were also distinctly told that if Higgins, in placing the candle as he did, was the agent of the plaintiff, the defendant was not liable ; but they were not told that if the defendant's claims upon the evidence on the points in question were found true, Higgins, in placing the candle, was the agent of the plaintiff.

They were, it is true, told that in determining this important question they should "examine the situation as disclosed by the evidence, the relation between the parties, methods and modes of doing business, the character of Higgins' acts and the acts themselves, taking into consideration, if you find it to be proven, Dore's prohibition from Higgins using the candle ; indeed, take all the evidence into your consideration, and then determine from all the facts and circumstances disclosed, whether Higgins in what he did was the agent of the defendant or of the plaintiff." But we think, under the somewhat peculiar circumstances of this case, that this general instruction was not sufficient for the guidance of the jury, and that they should have been instructed specifically as hereinbefore indicated. The plaintiff claimed the fire to have been caused by the negligence of Higgins, either (1) in placing the candle as he did, or (2) in carelessly knocking it over in delivering oil after it was placed. The jury should have had specific instructions adapted to the facts bearing upon each of these claims, to enable them to determine whose servant Higgins was while doing the one or the other of these acts ; and this was not given. The charge in other respects is unexceptionable, but in failing to charge as hereinbefore indicated we think the trial court erred.

Upon the trial below the defendant called and examined in chief a witness named Tredennick, who was a material and important witness for the defense. Upon his cross-examination he was asked whether his wife lived with him, and whether she had not obtained from him a divorce on the ground of desertion, and for total neglect of all the duties of the marriage covenant on his part to be performed. The defendant objected to the questions, but the court overruled

the objections, and the witness answered the first question in the negative and the second in the affirmative. Prior to this ruling the plaintiff had improved one McEnroe as a witness, and on his cross-examination the defendant had been permitted to show that McEnroe had been convicted of burglary and sentenced to the reform school ; and in making the ruling aforesaid the court said, in effect, that in his judgment there was no more reason for excluding these questions, than for excluding the above evidence with respect to McEnroe; it was only a question of degree. Subsequently, in referring to this matter in its charge, the court said : " When Mr. Tredennick was on the stand, in cross-examination, he was asked if his wife had been divorced from him; this question was allowed in order to discredit him as a witness. Anything in the past of a witness which might be discreditable is admissible for such a purpose. When it came in, the court compared it to the reception of the reform school record, submitted for a similar purpose, and said it came in on the same ground, being a question of degree, or in substance that. This would, I think, be a clear statement to a legal mind, but perhaps a jury might misunderstand it, and so I say I did not mean that the two things were either identical or similar, only that each was admitted as tending to discredit the witness ; it is for you alone to say what, if any, effect such a fact as this divorce would have upon the witness, tending to discredit him." The record thus shows, not only that the evidence objected to was admitted, but also that the jury were emphatically told they should consider it as evidence that tended to discredit the witness.

In so doing we think the court erred. The plaintiff was indeed clearly entitled to show, if he could, that Tredennick's character for veracity was bad; the only question is whether he could show it by the evidence here in question. He could attack the credit of the witness under our law, in at least three ways : 1. By testimony that the witness had a reputation for untruthfulness in the community where he lived. In this mode of attack the character to be shown is untruthfulness, and not general bad character ; and the evi-

dence in such cases is strictly confined to reputation for untruthfulness. *State* v. *Randolph*, 24 Conn. 363, 367. 2. By evidence under our statute (§ 1098) of his conviction of crime. In this mode of attack the evidence is confined to record evidence of conviction of crime that formerly disqualified. *Hall* v. *Brown*, 30 Conn. 551; *State* v. *Randolph*, 24 id. 363; *Card* v. *Foot*, 57 id. 427. 3. By cross-examination of the witness as to credit. Under this mode of attack it is held in all the States that the witness cannot be compelled to answer incriminating questions ; but whether he may be asked such questions, and whether he can be asked and compelled to answer, for the sole purpose of affecting his credit, questions not incriminating, the answer to which would tend to show his general bad moral character, are questions upon which the courts are not agreed. 1 Greenl. on Ev. (16th Ed.) § 461 (e).

In the case at bar the trial court evidently assumed that under our law the witness could, in the discretion of the trial court, be asked and compelled to answer, for the sole purpose of affecting his credit, questions not incriminating that tended to show his general bad moral character. Whether this assumption is correct or not, we have no occasion here to determine; for even on that assumption, we think the evidence offered and objected to was irrelevant, and therefore inadmissible to show bad moral character. It did not tend to prove any such general bad moral character as would or ought to affect the character of the witness for veracity. A man may be, in many ways and in very different degrees, a bad citizen, an unkind husband and father, and an unfaithful friend, and yet be a truthful witness. It may at times be difficult to draw the line separating conduct which ought to be considered as affecting the veracity of a witness, from that which ought not to be so considered, but there is no such difficulty in the case at bar; the conduct there admitted falls we think clearly within the latter kind of conduct, and should have been excluded. In this case we cannot say that the admission of the evidence in question did no harm to the defendant.

The conclusions thus far reached make it unnecessary to discuss the other claimed errors in the rulings upon evidence; as to them it is enough to say that we find no such error as would entitle the defendant to a new trial.

For the reasons given there is error and a new trial is granted.

In this opinion the other judges concurred.