WALTER N. CREER *vs.* THE ACTIVE AUTO EX-CHANGE, INC.

Third Judicial District, Bridgeport, April Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

In an action by an infant for the return of the consideration paid upon a contract of purchase, after rescinding the contract and restoring the purchased article, the claim of the defendant vendor that he cannot be restored to his original condition because of decline in value of the article, is purely defensive and must be specially pleaded.

Misrepresentation of his age by an infant at the time of making a contract, is no bar to his later rescission of it. It *seems*, however, that a tort action, or counterclaim for damages for fraud and deceit, will lie for such misrepresentation.

Neither the infant's appearance of maturity, nor the fairness of the contract, will operate as a bar to its later rescission by the infant.

An infant rescinding a contract of purchase, is not liable for the use of the article purchased during the time he had possession of it.

Creer *v.* Active Auto Exchange, Inc.

Whether, under a general denial of a counterclaim upon a note of the
plaintiff, the latter can show his infancy as a defense, *quœre.* Any
doubt respecting that question may, however, be resolved by amend-
ing the answer to the counterclaim so as to include that defense.
A person may testify as to his own age and date of birth.
A birth certificate of another State, admissible there to prove a birth,
is likewise admissible in this State, if properly authenticated in ac-
cordance either with Federal law or common-law rule; but since
judicial notice is taken only of the great seal of the foreign State,
or of the seal of its secretary of state attesting the seal and official
character of the officer signing, a certificate certified only by the
foreign registrar of births is not admissible in evidence in this
State.
Since the character of a witness for veracity is provable by his reputa-
tion in the community, rebuttal testimony impeaching his cred-
ibility should take the form of proof of such reputation; but error
can be predicated upon the admission of testimony as to his char-
acter in the community, only where objection is specifically di-
rected to the form and wording of the question.

Argued April 12th—decided July 27th, 1923.

ACTION by a minor to recover damages after his
rescission of a contract of sale made with the defend-
ant, and for the cancellation of several promissory notes
held by the latter, brought to the District Court of
Waterbury and tried to the jury before *Peasley, J.;*
verdict and judgment for the plaintiff, and appeal by
the defendant. *Error and new trial ordered.*

This was an action brought by an infant, by next
friend, to recover damages from defendant for its re-
tention of an automobile and certain cash, delivered
to it by plaintiff upon a contract for the purchase of
an automobile, which contract the plaintiff afterward
sought to rescind.

The first count of the complaint alleges the infancy
of the plaintiff at the time the contract was made,
October 30th, 1920; that on that day the parties en-
tered into an agreement whereby the defendant was
to sell and the plaintiff purchase a Studebaker touring-
car for the sum of $728; $300 cash on delivery and the

balance of. $428 in ten monthly payments of $42.80 per month; that title to the car should remain in defendant until full payment was made; that the first payment was made on that day by the defendant accepting a Studebaker roadster valued at $250 in lieu of cash and a cash payment of $50, and at the same time plaintiff executed and delivered to the defendant ten notes of $42.80 each, of which the first note was payable November 1st, 1920, and the others monthly thereafter for nine months; that on January 11th, 1921, plaintiff elected to rescind the contract, and on that day returned the Studebaker touring-car to defendant, which took the same into its possession; and that plaintiff had paid value to defendant to the amount of $342.80. Plaintiff claimed $500 damages and the cancellation of the notes.

The complaint contained a second count, which was afterward superseded by an amended second count. Demurrers to both of these last counts were sustained, and they are nor involved in this appeal. There was a demurrer to the first count which was overruled, and the action of the court in this respect forms a ground of appeal. Defendant then filed an answer and seven special defenses, which latter were afterward consolidated into one amended first defense and one amended second defense; paragraphs 10–13 of this latter defense were expunged by order of court as evidential, and on this action of the court error was assigned. A reply and an amended reply was filed thereafter denying its essential allegations, and in particular defendant's allegations that the contract was caused by plaintiff's fraud in misrepresenting his age. A counterclaim was filed by defendant in two counts, the first of which, setting up plaintiff's fraud, was abandoned at the trial, and the second, which sets up the execution of a promissory note by plaintiff to

defendant for $428 payable in ten equal instalments of $42.80 each, beginning November 30th, 1920, and alleging nonpayment of all but the first instalment. Plaintiff answered this count of the counterclaim by admitting the execution of the note and denying the remainder of its allegations, except the payment of one instalment. Upon all of the various allegations and denials above set forth the parties were at issue to the jury. Certain rulings by the court on evidence and portions of its charge to the jury are made grounds of appeal, which will be considered at large in the opinion, which also contains further facts.

*Carroll C. Hincks,* with whom, on the brief, were *William E. Thoms* and *Arthur F. Ells,* for the appellant (defendant).

*Michael V. Blansfield,* with whom was *Herman B. Engelman,* for the appellee (plaintiff).

KEELER, J. By the first assignment of error the defendant claims that the allegation of the complaint as to the return of the Studebaker touring-car is deficient, and therefore insufficient, in that it fails to allege that the car when returned was substantially as valuable as when he received it. In *Riley* v. *Mallory,* 33 Conn. 201, wherein it is held that an infant may rescind all contracts, executory or executed, subject to three exceptions, the opinion states that this privilege of an infant constitutes a rule of law with exceptions, and is not itself an exception to the general rule enforcing all contracts. The third of the three exceptions to the rule, as stated in the case cited, denies a recovery where the infant plaintiff seeks to rescind "executed contracts where he has enjoyed the benefit of them and cannot restore the other party to his

original condition." The plaintiff plead that he had
returned the car. His prior allegations had plead its
receipt by him; he had in the allegations under con-
sideration stated the transaction as he claimed it to be.
If defendant claimed that the return of the car did not
restore defendant to its original position, that was a
matter purely defensive, properly raised only in the
answer, as was afterward done, and the point was
thoroughly contested, forming the subject-matter of
one of the interrogatories submitted to the jury upon
a charge by the court which stated the question very
fairly upon defendant's claim. None of the authorities
cited by defendant to this point was in any way con-
cerned with a question of pleading.

Defendant in its ninth and eleventh reasons of ap-
peal, one addressed to the refusal of the court to charge
the jury, and the other to the charge on the subject as
given, contends that the misrepresentation of plaintiff
of his age at the time of making the contract was a
sufficient defense against plaintiff's claim for rescis-
sion. The court charged that it was not a defense, and
directed the jury to disregard it.

There is not full accord in all jurisdictions in the law
upon this point, but the great weight of authority is
in favor of the position taken by the trial court. Not
all of the cases, however, cited by defendant sustain
its contention; some of them are beside the question
in that they relate to representations in applications
for insurance wherein falsity goes to the formation of
the contract, and others relate to transactions in which
the infant could not fully restore the other party to his
original condition. The claim of the defendant, as
well as the reasoning of the cases the authority of which
it invokes, veers between fraud going to the formation
of the contract and invalidating it, and an estoppel
*in pais.*

Many of the cases supporting the claim of the plaintiff and the position of the trial court are leading and of paramount authority. We do not deem it necessary to give numerous citations, but will consider such of them as seem necessary in the following discussion. Most of them are cited in *Watson* v. *Ruderman*, 79 Conn. 687, 66 Atl. 515.

Shortly prior to his death in 1847, Chancellor Kent completed his work upon the sixth edition of his Commentaries, and the statements of law then found in his treatise are probably an adequate representation of the then-existing American law on the subject now under discussion. He says, 2 Kent's Commentaries, 240: "But there are many hard cases in which the infant cannot be held bound by his contracts, though made in fraud; for infants would lose all protection, if they were to be bound by their contracts made by improper artifices, in the heedlessness of youth, before they had learned the value of character, and the just obligation of moral duties. When an infant had fraudulently represented himself to be of age when he gave a bond, it was held the bond was void at law." And again, at page 241, he proceeds: "But the fraudulent act, to charge him, must be wholly tortious; and a matter arising *ex contractu*, though infected by fraud, cannot be changed to a tort in order to charge the infant in trover, or case, by a change in the form of the action." This latter statement is made in connection with an action against the infant sounding in tort, the former with regard to an action *ex contractu* in which a minor defendant pleads infancy. The learned author cites, in connection with the first of the above extracts, the case of *Burley* v. *Russell* (1839), 10 N. H. 184, which held that an infant maker and indorser of promissory notes, action upon which he defended by pleading infancy, was not estopped because at the time the

notes were given he falsely stated that he was of full age. A short time before the New Hampshire court had held in *Fitts* v. *Hall* (1838), 9 N. H. 441 (cited and relied on by defendant in the instant case), that an infant was liable in an action of deceit for damages for a false representation that he was of age, if he had in a previous action avoided his contract by reason of infancy. In *Burley* v. *Russell, supra,* it was claimed that the prior decision in *Fitts* v. *Hall,* just referred to, had established the validity of a claim of fraud as a reply to or defense by way of avoidance on the ground of infancy. The court said: "Our decision in *Fitts* v. *Hall,* 9 N. H. 441, does not lead to such a result. That decision is, that an infant is liable, in case, for a fraudulent affirmation that he is of age, whereby another is induced to enter into a contract with him, if he afterwards avoids the contract, by reason of his infancy. In an action of that description, he is subjected to such damages as the other party has sustained. But this may or may not be to the amount which he promised to pay by his contract. The measure of damages is by no means necessarily the same. The amount promised to be paid may be greater than the damage sustained, by reason of the inexperience of the minor, which has led him to promise a greater sum than the property received is worth. To hold him estopped might punish him, therefore, beyond his demerits. And, besides, this would overturn much of the doctrine which has long been received in relation to the right of a minor to avoid his contracts, and introduce a new rule, which seems not to be required by the exigency of the case, or justified by principle or precedent." We have gone into the above discussion somewhat at length, because from it there emerges what we conceive to be the true doctrine, that is, that fraud is not a sufficient reply to the avoidance of a contract by a plea of infancy; that

the remedy, if any, for the fraud, is in tort in the nature of an action of deceit against the minor.

Williston, Law of Contracts, Vol. 1, § 245, treating of misrepresentation by a minor of his age, quotes with approval the summary of the present English law upon that subject, that the law has "scrupulously stopped short of enforcing against him [the infant] a contractual obligation, entered into while he was an infant, even by means of a fraud." Continuing, in the same section, the author says: "Whether the infant is liable in tort for deceit in misrepresenting his age is not so clear. There is considerable authority that he is not. The soundest view, however, is that the infant is liable."

The underlying reason running through the cases supporting the action of tort against the infant, seems to be that if an infant is held estopped from setting up his infancy because of fraudulent representation at the time of making the contract, and for that reason is held to the terms of the contract as if of full age, his right of rescission may thereby in many cases be seriously impaired, in that he is held to the full damages of a breach of contract, which in many cases may be seriously unfair owing to his inexperience in making an improvident agreement, while if the remedy of the other party is confined to an action of tort, the latter will recover the actual damages suffered from the fact of deceit, which is all to which he is in fairness entitled. Since, then, the tort of the infant is held not to be involved in the formation of the contract and hence defensive against his attempt to rescind, it follows that the remedy of the other party, if any, is an action for a tort either brought independently or properly set up by a counterclaim or cross-complaint. As appears in the statement of facts in the present case, the defendant did plead such a counterclaim, which was afterward withdrawn.

The question now discussed has not been definitively passed upon by this court, but the indication in cases having a bearing upon it, are favorable to the view above stated. In *Geer* v. *Hovy*, 1 Root, 179, plaintiff brought his suit in equity to the County Court showing that the minor defendant, pretending to be of full age, traded horses with plaintiff and cheated him, and that he had no remedy at law. The County Court awarded plaintiff £10 damages. On writ of error the decree was reversed "upon the ground that a minor is no more liable in equity than law for fraud in a contract, for if he is incapable of making, he is incapable of committing a fraud in a contract; besides, this would defeat the law made for the protection of minors; if, although they would not be liable upon their contracts yet by using deceit in them, they should be made liable." Evidently this early decision denies the right to in any way recover for a deceit on the part of an infant connected with the making of a contract. The question did not again arise for our consideration until the case of *Watson* v. *Ruderman*, 79 Conn. 687, 66 Atl. 515. As regards the primary question of the effect of fraud on the part of an infant in inducing formation of a contract, the court cites a large number of authorities on each side of the question, and adds: "We have no occasion to consider the questions which are suggested by these cases. Reference is here made to the attitude which the courts have assumed, only for the purpose of showing their reluctance to withdraw from infants the privileges, as respects their property engagements, which are be-stowed upon them for their protection, and that such withdrawal is never countenanced except under strong justification from circumstances other than their participation in the transaction." The court did in effect, however, in that case pass upon the question

of pleading arising in the instant case. The complaint was in ordinary form for the foreclosure of a mortgage securing a promissory note, the minor defendant plead infancy, and in reply plaintiff, admitting the allegation of infancy, set up certain facts connected with the transaction in avoidance of the defense, and in connection therewith claimed certain affirmative relief by way of establishing the validity of the promissory note. A demurrer to the reply was sustained by the trial court, and this action was sustained in this court. In its opinion the court says that when "the plaintiff discovered that he desired relief not already prayed for, he should have amended his complaint to embody it, and such facts, in addition to those already therein, as were deemed pertinent." That is, that the facts which would take a given transaction out of the ordinary rule whereby an infant may disaffirm his contract, constitute an affirmative cause of action and should be so pleaded.

Having regard to the fact that by the weight of authority, fraud by an infant in inducing a contract may not be pleaded defensively in an action by him based upon his disaffirmance, the expression of opinion in *Geer* v. *Hovy* and *Watson* v. *Ruderman, supra,* strongly indicating a reluctance to withdraw any protection enjoyed by infants under our law beyond what is clearly necessary in the interest of justice, we are led to hold that fraudulent misrepresentation by an infant of his age cannot be pleaded in an answer in an action by an infant disaffirming his contract, and seeking to recover back money paid by him in connection therewith. The trial court did not err in its treatment of defendant's claim in this regard.

The conclusions which we have arrived at above dispose of the second, third and fourth assignments of error, concerned with the infant's appearance of

maturity, and the fairness of the contract as to him. If a deliberate misrepresentation of age cannot be used defensively in an answer in this action, as we have stated, clearly any other circumstance whereby defendant was led to believe the plaintiff, in this respect, is immaterial. As to the fairness of the contract, we held in *Riley* v. *Mallory*, 33 Conn. 201, that an infant can rescind all contracts, whether fair to him or not.

The fifth assignment of error challenges the action of the trial court in admitting the testimony of plaintiff as to his own age. We have no decision of this court upon the specific point raised, but it has been held in other jurisdictions with great uniformity that such testimony is admissible. 1 Greenleaf on Evidence, § 106; Wigmore on Evidence (2d Ed.) §§ 667, 1493, and the numerous cases cited in note to the first named section. In *Commonwealth* v. *Stevenson*, 142 Mass. 466, 8 N. E. 341, the court (*Holmes, J.*) says: "We see no sufficient reason why a person should not be allowed to testify to the date of his birth. . . . The certificate which is made evidence [by statute] is hearsay, and no more likely to be accurate than the sworn statement of the party concerned, based, as it must be, on family tradition, and fortified by his knowledge of himself."

The sixth assignment of error questions the admission in evidence of a birth certificate certified by the registrar of births at Ishpeming, Michigan. The birth certificate, Exhibit A, is a copy of the birth return made by the physician attending at plaintiff's birth, and is attested as the official record of the birth on record in the office of the recorder and registrar of the City of Ishpeming, by the signature of such recorder and registrar and the affixing of the seal of the city. By § 5726 of the General Statutes, it is

provided that the public statutes of other States of the union "shall be legal evidence, and the courts shall take judicial notice of them." In so doing, the trial court would have found that the record of birth was made in accordance with the laws of the State of Michigan and was in proper form, that the copy of record was certified by the person authorized so to do by his signature and the seal of the city, and was admissible in evidence in that State to prove a birth. The document was not authenticated under the law of the United States pertaining to exemplifications, but that law is not exclusive, and the same was admissible if found to be so by any of the methods known to the common law, or in consonance with the usages of nations. *Barber* v. *International Co.*, 73 Conn. 587, 602, 48 Atl. 758. The common-law doctrine is thus stated in 4 Wigmore on Evidence (2d Ed.) § 2161: "What we find, then, is this general rule: So far as a particular seal or signature is held to admit a document, the . . . seal or signature evidences the document as genuinely executed by the purporting person, and his official character is assumed without evidence." In the application of the rule above quoted, we have then to inquire whether the seal affixed is one that our courts will judicially notice, and we find that it is not. In order to be judicially noticed the foreign seal must be the great seal of a State, or by the general consensus of authority at least the seal of the secretary of state attesting the seal and official character of the official signing. The certified copy admitted, therefore, was not admissible. It cannot be said that the error in admitting the document was harmless. The question of plaintiff's age was one of the two major issues in the case. Plaintiff had sworn to his age and the jury had his testimony, and from it might have found, as it did, that he was an infant at the time of contracting. But it can

hardly be said that the evidence of the certificate was merely cumulative. The case was stoutly contested, and had the plaintiff's testimony to his age been all of the evidence bearing upon that point, the jury considering the burden of proof, might have found it unsatisfactory and disregarded it. But if his testimony was supported by an official certificate, regular in form, for all practical purposes it would have removed any doubt in the mind of the jury and rightly so. The jury might have found it of more weight than the oral testimony. The admission of the document was, therefore, reversible error.

The seventh assignment of error relates to the admission of evidence offered by the plaintiff on his rebuttal, impeaching the credibility of the defendant's witness Morganstern. The impeaching witness was asked whether he knew the character of the defendant's witness for truth and veracity in the community of Waterbury, and this was followed up by the question whether or not his character in that regard was on a par with that of mankind in general. Objection was made to these questions on the ground that the same were not proper questions in rebuttal and that the testimony was irrelevant and immaterial. The testimony was clearly in rebuttal. That is the proper stage in the trial for a plaintiff to impeach a defendant's witness. As stated in defendant's brief, the real objection was to the form of the question concerning the character of the witness, and not concerning his reputation. The questions as asked were exactly in form with those stated to be the usual and proper questions in *State* v. *Randolph*, 24 Conn. 363. We have since emphasized the fact that a person's character in any regard is shown by his reputation in such regard in the community, and in recent practice the usual question is as to the reputation of a witness. *Dore*

v. *Babcock,* 74 Conn. 425, 50 Atl. 1016; *Shailer* v. *Bullock,* 78 Conn. 65, 61 Atl. 65; *Verdi* v. *Donahue,* 91 Conn. 448, 99 Atl. 1041; *Norwich* v. *Richmond,* 96 Conn. 582, 115 Atl. 11. The use of the word "character" in the questions asked, was doubtless inadvertent on the part of counsel, as also the allowance of the same in the form propounded. If the defendant's counsel had wished to attack the form of the questions, his objection should have been specific in that respect, and failing that he can hardly be heard now to allege defects in the form of the questions. He bases his right to do so, however, upon the claim that character is immaterial, and that the only thing concerned is reputation. This is a mistaken conception, since the only thing really material is just the idea of character; but since the actual character of a person is not exactly ascertainable by any process of human inquiry, the nearest thing that can be obtained in judicial investigation is his reputed character, that is, his reputation, and hence the form of question now generally made use of. In default of an objection specifically addressed to the form of the question, there was no error in the ruling of the trial court.

The eighth assignment of error is a refusal by the court to charge as requested by defendant that the latter was entitled to compensation from plaintiff for the use of the car while it was in the latter's possession prior to the rescission of the contract, on the ground that the defendant is not restored to *status quo* unless it receives such compensation, and that the payment for the use is a prerequisite to rescission. The *status quo* means the original position of the parties at the time of the consummation of the sale. It is the original position considered in *Riley* v. *Mallory,* 33 Conn. 201. The original position of the defendant is that it had an automobile which it delivered to the

plaintiff; it was restored to it, as the jury found by answer to a special interrogatory, in as good a condition as when delivered to the plaintiff; defendant was thereby placed in *status quo ante,* or its original position.

There is a conflict of authority in regard to the question just discussed, but its weight seems to be in favor of the position above outlined. In *Whitcomb* v. *Joslyn,* 51 Vt. 79, the court in its opinion says: "The plaintiff is no more liable for the use of the wagon than for its agreed price; neither the wagon, nor the use of the same, by anything appearing in the case, can be claimed to be necessaries, for which he would be liable." To hold an infant liable for use of an article which he had returned, would be imposing upon him all the liabilities of a person of full age. Cases may easily be imagined, and such cases occur in the books, where a chattel has been returned by an infant in as good condition as when taken by him, but had been held by him for so long a period that a fair rental value would exceed the value of the chattel itself, and the infant brought in debt. In some of the cases where an infant has been charged for use of an article, it has been put upon the ground that the use was a fair measure of depreciation, and has not been upheld as a proper charge in itself. Whereas in the instant case, the jury were instructed to allow the defendant any actual depreciation in the value of the car while in plaintiff's possession, and defendant was accorded the full measure of recovery allowed by our law.

The tenth and eleventh assignments of error are concerned with the refusal to charge defendant's request with reference to the second count of its counterclaim, and with the charge upon that point given by the court. The plaintiff admitted the ex-

Creer *v.* Active Auto Exchange, Inc.

ecution of the note and the payment of $48.20 on account thereof, and otherwise denied the second paragraph that the balance of the note was then due and owing. Defendant's point in this regard is that under this denial infancy could not be shown in avoidance, but should have been specially plead, and hence the defendant was entitled to a verdict upon its counterclaim. The jury found a general verdict in favor of the plaintiff, and the plaintiff had a general judgment thereon for a sum in damages, and this would have been a conclusive answer to defendant's present claim, except for the fact that the court did not instruct the jury, as requested by defendant, that the plaintiff had introduced no legal evidence in support of his denial of indebtedness, and that a verdict should be rendered on the counterclaim for defendant for the unpaid balance of the note, but did instruct the jury that "if the issues as to the rescission of the contract alleged in the complaint are found in favor of the plaintiff, the second count of the counterclaim, being a statement of the price the plaintiff contracted to pay the defendant for the car, will be by such finding disposed of."

As a new trial of this action is to be granted, we do not pass upon this point further than to say, that if the action is again tried, a proper amendment by the plaintiff of his answer to the counterclaim will remove all doubt on this point.

There is error and a new trial is ordered.

In this opinion the other judges concurred.