STATE OF CONNECTICUT *v.* JOHN GUERRA

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

Argued October 4—decided October 29, 1963

*Charles Henchel,* with whom was *Morris W. Mendlesohn,* for the appellant (defendant).

*George R. Tiernan,* assistant state's attorney, with whom, on the brief, was *Arthur T. Gorman,* state's attorney, for the appellee (state).

King, C. J. The defendant appeals from his conviction, after a trial to the court, of a violation of § 18-19 of the General Statutes as amended.[1]

The material facts may be rather briefly summarized. On June 23, 1961, the defendant's brother Carmine Guerra, who had been convicted of a crime and sentenced to a term in jail, began service of his sentence. Alexander Lucas, who was related by marriage to the Guerras, was one of the guards at the jail, and Sidney Rush was a senior guard. On June 23, Lucas told Rush that Carmine had been

[1] "Sec. 18-19 [as amended]. CONVEYING CERTAIN ARTICLES INTO STATE PRISON OR JAILS PROHIBITED. Any person not authorized by law who conveys or passes, or causes to be conveyed or passed, into the State Prison or into any jail or the grounds or buildings thereof any opium, cocaine, chloral, chloroform or other narcotic, or any barbiturates, or any intoxicating liquors, or any firearm, weapon or explosive of any kind, or any rope, ladder or other instrument or device for use in making, attempting or aiding an escape, shall be fined not more than one thousand dollars or imprisoned not more than five years or both. The unauthorized conveying or passing of any rope or ladder or other instrument or device, adapted for use in making or aiding an escape, into said prison or jails or the grounds or buildings thereof, shall be presumptive evidence that it was so conveyed or passed for such use. Any person not authorized by law who conveys into said prison or any jail any letter or other missive which is intended for any prisoner, or who conveys from within the enclosure to the outside of said prison or jail any letter or other missive written or given by any prisoner, shall be fined not more than one hundred dollars or imprisoned not more than one year or both. Any attempt to do any of the acts prohibited by this section shall subject the offender to the same penalty as the completed act." Public Acts 1961, No. 580, § 9, effective June 22, 1961.

This statute has been in existence in substantially the quoted form insofar as material to this case since its original enactment as chapter 46 of the Public Acts of 1905, except that its application was restricted to the state prison until it was amended to include jails in 1953. Cum. Sup. 1955, § 1685d; see General Statutes, Rev. 1918, § 1938; Rev. 1930, § 1988; Rev. 1949, § 3012. (Section 18-19 has been somewhat changed and now appears as General Statutes § 53-162a. In 1963, § 53-162a was amended by Public Acts 1963, No. 12. Neither change became effective so as to be applicable to this case.)

sentenced to jail, and Rush agreed with Lucas that on certain evenings, when Rush was in charge, special privileges could be arranged for Carmine. On Saturday evening, July 1, 1961, Rush was in charge, and Lucas asked Rush for permission to call some of Carmine's family and arrange for a visit and refreshments. Later, Rush was informed by Lucas that he had admitted the defendant and two others, carrying sandwiches and potato salad, to visit Carmine. Rush then met them and was introduced by Lucas. Carmine was summoned and all partook of the refreshments. The visitors stayed about half an hour, and before leaving, the defendant gave Lucas $20 and Rush $10. It was the defendant's expectation that the gift to Rush would procure favors for Carmine and the defendant. The defendant asked Rush if it would be all right to bring back a bottle of liquor and was told that it would be. The defendant and the other visitors then left. The defendant went home, procured a bottle of whiskey, and returned with it to the jail. Lucas opened the jail door, and the defendant gave him the liquor, which he accepted. Lucas handed the bottle to Rush, who drank some of it and gave some to certain of the other prisoners. On leaving his tour of duty the next morning, Rush took the remainder of the liquor and the $10 home. Both the unconsumed liquor and the $10 were subsequently confiscated by the police.

The court concluded that the defendant, not being authorized by law, conveyed or passed or caused to be conveyed or passed into the jail certain intoxicating liquors and that in so doing he violated § 18-19 of the General Statutes as amended.

The defendant, on three basic grounds, claimed that the statute was not violated. The first ground

was that the liquor was not brought into the jail to aid in an escape. This ground is without merit. The statute prohibits the conveying of certain specified articles, including intoxicating liquors, into a jail. The clause relating to escape clearly modifies only the particular articles specified immediately preceding it, that is, "any rope, ladder or other instrument or device for use in making, attempting or aiding an escape." This construction is fortified, if indeed any fortification is necessary, by the sentence immediately following the one from which the foregoing quotation was taken.

The defendant's second basic ground is that the statute does not prohibit the carrying of liquor into the jail as a gift to a guard. The short answer is that the statute contains no such limitation. The express terms of the statute forbid "[a]ny person not authorized by law" from conveying or passing liquor into the jail. It is immaterial what is to be done with the liquor after it has been brought in. The threat to jail discipline and to the rehabilitation of the inmates, many of whom are addicted to the immoderate use of intoxicating liquors, in permitting liquor in the jail, except as authorized by law, is obvious and fully explains the prohibition in the statute. As a further claim under this ground, the defendant contends that § 30-98,[2] when read in con-

---

[2] "Sec. 30-98. LIQUOR NOT TO BE FURNISHED TO PRISONERS. Every jailer, prison-keeper or other officer who furnishes, or suffers to be furnished, to any prisoner under his charge any alcoholic liquor, except as medicine, and any person who delivers to any such prisoner any alcoholic liquor without authority from such keeper, shall be subject to the penalties of section 30-113."

This statute first appeared as §§ 9 and 10 of part 6 of chapter 107 of the Public Acts of 1882. It continued as §§ 3098 and 3099 of the Revision of 1888; as §§ 2707 and 2708 of the Revision of 1902; and as §§ 2807 and 2808 of the Revision of 1918. It was eliminated from the Revision of 1930 as obsolete, presumably because of the

junction with § 18-19, makes clear a legislative intent to restrict the operation of § 18-19 to the supplying of intoxicating liquor to an inmate. Section 30-98 is concerned with the furnishing of liquor to prisoners and makes provision for the furnishing of intoxicating liquor "as medicine." Section 18-19 is concerned with the bringing of intoxicating liquor into a jail. The defendant was not, however, charged under § 30-98, and we are not called on to consider it, other than to state that the phrase "authority from . . . [a] keeper" in § 30-98 is not the equivalent of "authorized by law" in § 18-19, the statute under which the defendant was prosecuted. There is no indication that § 30-98 was intended to, or does, limit the operation of § 18-19. The claim that it does is without merit.

The third basic claim of the defendant, and that which he seems most strongly to stress, is that the phrase "not authorized by law" exculpates the defendant in this case since Rush, who was in charge of the jail, told the defendant that it was all right to bring in the liquor. Whatever effect this permission might have on the severity of the penalty, in the event that the court felt that the defendant, notwithstanding his antecedent payments of money to Rush and Lucas under the circumstances already mentioned, in good faith relied on Rush's purported authorization, it could not affect the question of guilt or innocence. The statute prohibits the bringing into the jail of intoxicating liquor by anyone not authorized by law. As we have indicated, authorization by Rush was not the equivalent of being "authorized by law." See *Hopkins* v. *State,* 193 Md.

existence of prohibition, but was restored in 1933 (Cum. Sup. 1933, § 733b; Cum. Sup. 1935, § 1077c) and was continued as § 4299 of the Revision of 1949.

489, 498, 69 A.2d 456, appeal dismissed, 339 U.S. 940, 70 S. Ct. 797, 94 L. Ed. 1357. Unless the defendant was authorized by law, and, of course, there is no claim that he in fact was, his action was illegal and in contravention of the terms of the statute.

Intent to do the prohibited act, not intent to violate the criminal law, is the only intent requisite for conviction in the case of many crimes constituting violations of statutes in the nature of police regulations. *State* v. *Gaetano,* 96 Conn. 306, 316, 114 A. 82, and cases cited; *State* v. *Sul,* 146 Conn. 78, 86, 147 A.2d 686. This statute was obviously such a police regulation. Indeed, statutes of this general type are especially common in the control and regulation of the sale and use of intoxicating liquor. *State* v. *Gaetano,* supra; 1 Wharton, Criminal Law and Procedure § 17, p. 28.

Two other claims of law were not made at the trial, and we do not consider them.

There is no error.

In this opinion the other judges concurred.