## State of Connecticut *v.* Samuel Taylor

King, C. J., Murphy, Shannon, House and Cotter, Js.

Argued June 3—decided October 7, 1965

*Jacob D. Zeldes,* special public defender, with whom was *Elaine C. Amendola,* for the appellant (defendant).

*Joseph T. Gormley, Jr.,* assistant state's attorney, with whom, on the brief, were *Otto J. Saur,* state's attorney, and *John F. McGowan,* assistant state's attorney, for the appellee (state).

COTTER, J. On January 30, 1958, Samuel Taylor was arrested and charged with aiding and abetting Joseph Gauze, a codefendant, in furnishing drugs to a minor. Gauze was charged with furnishing drugs to a minor. Cum. Sup. 1955, § 2105d (General Statutes § 19-267). They were tried simultaneously, Taylor to the court and Gauze to the jury. Both were found guilty. At the trial each was represented by private counsel. After sentence was passed, Taylor retained new private counsel for the purpose of taking an appeal to this court. His appeal was filed June 7, 1958. The appeal was

withdrawn by the attorney on October 4, 1958, after consultation with Taylor, because Taylor was unable to pay the fee which had been agreed upon. Subsequently, in October, 1962, Taylor initiated a habeas corpus proceeding in the Superior Court, claiming that he had been denied the right to an appeal and that he had been denied the right to have assistance of counsel in the preparation of an appeal. The Superior Court, having taken the testimony of all parties involved, found that Taylor had consented to the withdrawal of the appeal by counsel and had thereby waived his right to an appeal. We refused to review that determination. See General Statutes § 52-470. Taylor's petition to the United States Supreme Court for a writ of certiorari was denied on October 14, 1963. *Taylor v. Connecticut*, 375 U.S. 840, 84 S. Ct. 86, 11 L. Ed. 2d 68.

Nine days later, on October 23, 1963, Taylor began a habeas corpus action in the federal District Court for the district of Connecticut. That court, exercising its plenary power to review constitutional issues arising out of state court convictions, as established in *Fay* v. *Noia*, 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837, and *Townsend* v. *Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770, determined that Taylor had not waived his right to appeal and ordered that Taylor be discharged unless, within a reasonable time, an appeal of the 1958 conviction was granted. *United States ex rel. Taylor* v. *Reincke*, 225 F. Sup. 985 (D. Conn.). Pursuant to this order of the District Court, this appeal was granted and counsel appointed.

Before proceeding to the basic claims of the defendant, it is necessary to consider a preliminary matter. The defendant makes some claim that this

court should "find", because of the lapse of five and one-half years, that the finding of the trial judge is not reasonably supported by his memory and that we should therefore order a new trial. This claim was first made in a motion to the trial judge, which he denied. The trial judge's denial of the motion can be construed only as a determination that he could make a finding reasonably supported by memory. As pointed out by the District Court: "It must be left to the judge . . . to test his own memory." *United States ex rel. Taylor* v. *Reincke,* supra, 991. The question whether the time lapse between trial and appeal is of sufficient duration to prevent the making of a finding is one which the trial judge is in a unique position to decide, and we find no reason for disturbing that determination in this case. The entire transcript of the trial containing the testimony of all the witnesses was filed with the court and was available to the trial judge before he made his finding. This transcript contained all the evidence relevant and material to the issues raised on appeal. Practice Book, 1951, § 404 (as amended, Practice Book, 1963, § 641). It would be absurd to believe a trial judge of many years' experience could not refresh his memory from a full transcript of the trial while witnesses are permitted under our rules of jurisprudence to refresh their memories in innumerable ways and from all sorts of writings of ancient vintage. 3 Wigmore, Evidence (3d Ed.) §§ 758–64; 58 Am. Jur. 323–38, Witnesses, §§ 578–608. We therefore pass to the merits of the appeal.

The defendant in his brief raises several claims. For convenience we first consider the claims arising from rulings on evidence. The court admitted into evidence, over the objection of the defendant, a

magnetized metal box found near the place where the sale of narcotics took place. This metal box contained three glassine packets of heroin. The defendant objected to its admission on the ground that the state had shown no connection between the box and either the defendants or the crime charged. The court admitted the box into evidence when the state said that it would later show that the glassine packets in the box were of the same type as the one which was the subject of the sale to the minor, Edmund Arsenault. The defendant claims that the state failed to fulfil this promise to connect. We cannot agree. The necessary link in the chain of circumstances was drawn when the individual packet of heroin, the subject of the sale to Arsenault, became a full exhibit. The trier was then in a position to compare this packet with the packets in the metal box to justify the inference that they had a common origin. *State* v. *Belanger,* 148 Conn. 57, 59, 167 A.2d 245. There was adequate corroborative evidence to support this inference. After this offer of proof to connect, substantial evidence was introduced. The state's expert witness, Dr. Abraham Stolman, testified that the packets in the box, as well as the individual packet in the prime transaction, contained heroin. There was testimony by several police officers who observed the activities that the defendant and Gauze entered the alley where the box was subsequently found and emerged only moments later, at which time the individual packet was passed from Gauze to Arsenault. In addition, photographs were marked as full exhibits to show the locus of the activities of the defendant and Gauze. Using these photographs, witnesses testified to the circumstances in detail, and the trial judge, if he believed the testimony, could find that the defend-

ant and Gauze went into the alley, secured a packet of heroin from the cache, and proceeded to walk to Arsenault and give it to him. On the basis of later evidence, therefore, the promise to connect the metal box to the main case was fulfilled by the state, and the box was properly before the court as part of the overall case. *Steiber* v. *Bridgeport,* 145 Conn. 363, 366, 143 A.2d 434. These facts are in a train of events in evidence which the court could consider. It is fundamental that "circumstantial evidence may be as cogent and convincing as direct evidence and may properly be found to outweigh conflicting direct evidence." *The Rocona* v. *Guy F. Atkinson Co.,* 173 F.2d 661, 665 (9th Cir.) (citing 32A C.J.S., Evidence, § 1039). "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but also may be more certain, satisfying and persuasive than direct evidence." *Michalic* v. *Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20; *Rogers* v. *Missouri Pacific R. Co.,* 352 U.S. 500, 508 n.17, 77 S. Ct. 443, 1 L. Ed. 2d 493, rehearing denied, 353 U.S. 943, 77 S. Ct. 808, 1 L. Ed. 2d 764. "Courts must necessarily rely upon circumstantial evidence and are entitled to draw reasonable and logical inferences from all the facts." *Hudick* v. *Tycz,* 142 Conn. 715, 717, 118 A.2d 306.

The court also admitted into evidence a birth certificate, purportedly that of Arsenault, who testified for the state. The defendant claims that there was no adequate foundation to show that Arsenault was the person named in the birth certificate and therefore that it was improperly admitted. The only purpose for which the birth certificate was offered was to show that Arsenault was under twenty-one years of age at the date of the events described in the information. Arsenault testified without objection

that he was born on January 17, 1938. Thus, his birth date was established without reference to the birth certificate by competent and adequate evidence of his age. *Creer* v. *Active Auto Exchange, Inc.,* 99 Conn. 266, 276, 121 A. 888. The birth certificate was merely corroborative of Arsenault's age, which, although his minority was an essential element of the state's case, was not actively contested by the defendant.

Another contention of the defendant is that, under the total circumstances of the case, a conviction based on the testimony of Arsenault deprived him of a fair trial, as guaranteed by the fourteenth amendment to the United States constitution and article first, § 9, of the Connecticut constitution. This argument is predicated upon the fact that Arsenault, at the time of his testimony, was awaiting sentencing in another case on a charge of unauthorized possession of narcotics, to which he had entered a guilty plea some two months prior to the Taylor-Gauze trial. It is the defendant's claim that these circumstances created an inherently coercive situation and that the office of the state's attorney, recognizing this, illegally delayed imposition of sentence upon Arsenault, through control over the criminal calendar, until after the trial of Taylor and Gauze had been completed. The control of the sentencing was in the court. Arsenault was properly represented by counsel, who was available for his protection. No one complained. Even if it is assumed that Arsenault did have a constitutional argument relating to speedy sentencing, the defendant cannot now lay claim to that argument as part of his own case. *Tileston* v. *Ullman,* 318 U.S. 44, 46, 63 S. Ct. 493, 87 L. Ed. 603. From the sentence Arsenault received, charged merely as a user, it

does not appear that he was treated lightly. He was sentenced to an indefinite term in the Connecticut reformatory, under General Statutes §§ 17-390 and 17-389, which could amount to an effective sentence of as much as five years.[1] Courts of general jurisdiction may delay sentencing for periods of time. *Miller* v. *Aderhold,* 288 U.S. 206, 53 S. Ct. 325, 77 L. Ed. 702; *Miner* v. *United States,* 244 F. 422 (3d Cir.). The United States circuit courts do not hold that a trial court loses jurisdiction to impose sentence at a later date. See note, 97 A.L.R. 802, 804. Then, too, in the absence of a request for immediate execution of a sentence, a waiver of any delay may be deemed to have occurred. *Serra* v. *Cameron,* 133 Colo. 115, 120, 292 P.2d 340; see 15 Am. Jur. 141, Criminal Law, § 487.

We cannot agree, under the facts of this case, that the defendant was denied his constitutional right to a fair trial. There is no indication that Arsenault was influenced by promises into testifying against the defendant and Gauze. In any event, such circumstances would bear on the credibility

---

[1] "Sec. 17-390. DETENTION FOR OFFENSE PUNISHABLE BY PRISON OR JAIL SENTENCE. Any offender sentenced to the reformatory by the superior court for any offense punishable by imprisonment in the State Prison may be detained in the reformatory not more than five years, unless he has been sentenced for a longer term, in which case he may be held for such longer term. . . ."

"Sec. 17-389. COMMITMENTS. UNIFORM FORM OF WARRANTS. Any male person between the ages of sixteen and twenty-five years who is convicted of an offense for which he may be punished by imprisonment for a shorter period than life, either in the State Prison or in a jail, may be committed to the reformatory if he appears to the trial court to be amenable to reformatory methods . . . . The judge imposing a reformatory sentence shall not fix the term unless it exceeds five years but shall impose a sentence of imprisonment in the reformatory. . . ." (Subsequently amended in a manner immaterial to this opinion by Public Acts 1959, No. 28 § 58, No. 37, and No. 615 § 8, and Public Acts 1965, No. 503.)

of the witness rather than on his competency, and the trial court is of course the sole judge on such matters. The defendant has pointed to no rule of law which required exclusion of Arsenault's testimony or which can now be invoked to overturn a conviction which it helped to bring about. The competency of Arsenault to testify in this case is governed by the same considerations which allow an accomplice to testify against a criminal defendant. *State* v. *Wolcott,* 21 Conn. 272, 280. If the defendant's argument is carried to its logical conclusion, a conviction based on the testimony of an accomplice awaiting trial would also deprive a defendant of his right to a fair hearing, and the power of the state's attorney to prosecute or not would also be as "inherently coercive". Arsenault's credibility and the weight to be accorded his testimony were for the trier and were open to attack by cross-examination. *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505. While an inordinate and unrestrained attack is made on the conviction, grounded on this issue, and the defendant cites innumerable sources as authority in an oblique manner, he admits no specific case can be found to support his all inclusive and sweeping argument in a zealous attempt to come under the panoply of due process. Since earliest times, consideration has been given to the testimony of a witness implicated in a crime with another who turns state's evidence. *Whiskey Cases,* 99 U.S. 594, 25 L. Ed. 399; see 14 Am. Jur., Criminal Law, §§ 114–16. Such a practice does not deny a convicted confederate due process of law. *Lisenba* v. *California,* 314 U.S. 219, 227, 62 S. Ct. 280, 86 L. Ed. 166, rehearing denied, 315 U.S. 826, 62 S. Ct. 620, 86 L. Ed. 1222. The issue then is one of credibility, and merely because an accused claims that the case is

based principally upon the testimony of an informer, not yet sentenced, who obtained the narcotic through him at the behest of the police, we cannot overrule the decision of the trier after the trier has balanced and weighed all the circumstances and evidence leading to a conviction of an accused. The defendant has failed to support his claim that the procedure followed was erroneous or that it operated to deprive him of a fair trial. See *United States* v. *Pisano,* 193 F.2d 355 (7th Cir.).

The defendant also claims that the statute under which he was convicted is unconstitutional in that it does not specifically define the term "minor".[2] Statutory language is to be given its plain and ordinary meaning unless such meaning is clearly at odds with the legislative intent. *Finoia* v. *Winchester Repeating Arms Co.,* 130 Conn. 381, 384, 34 A.2d 36; *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584. The ordinary meaning of the word "minor" is one who is under twenty-one years of age. See Webster, Third New International Dictionary. There is no indication that the legislature intended to use it otherwise in this instance. Our common law also considers a minor to be any person under the age of twenty-one and, although the defendant's crime is not of common-law origin, we deem the common law to be relevant in determining, as we do, that the statute in question is sufficiently clear to give the public fair warning of the crime involved. *Jones* v. *Jones,* 72 F.2d 829, 830, 63 App. D.C. 373, 95 A.L.R. 352 (citing the common law applicable to the

---

[2] "Sec. 19-267. FURNISHING OF DRUGS TO MINORS. Any person convicted of the illegal sale, barter, exchange, gift or offer of any narcotic drug to a minor shall be imprisoned, for the first offense, for not less than twenty nor more than thirty years, and for any subsequent offense shall be imprisoned in the State Prison for life."

District of Columbia. *Crawford* v. *United States,* 212 U.S. 183, 195, 29 S. Ct. 260, 53 L. Ed. 465; *Baker* v. *Gaffney,* 141 F. Sup. 602, 603 [D.D.C.]); 27 Am. Jur., Infants, § 5; 43 C.J.S., Infants, § 2; see also *Judson* v. *Blanchard,* 3 Conn. 579.

We do not agree with the defendant's claim that the conviction is voidable on the ground that the state failed to show that the drugs were "knowingly" furnished to a minor. The doctrine of criminal intent has no application to this case since the unauthorized sale of drugs is a crime whether or not the purchaser is a minor. General Statutes § 19-246. The doctrine is intended only to serve those who may have committed a crime without any "guilty knowledge", and, in this instance, there is no contention that the defendant fell into such a category. Cf. *State* v. *Sul,* 146 Conn. 78, 147 A.2d 686; *State* v. *Guerra,* 151 Conn. 159, 165, 195 A.2d 50. There is a valid legislative purpose in protecting society from those who would corrupt the morals of its youth. *State* v. *Rosenfield,* 111 Minn. 301, 303, 126 N.W. 1068. A defendant cannot deny his guilt on the basis of ignorance of the age of a minor, especially where the statute is designed to shield minors from the particular corrupting influence of the activities involved in this case. In a serious transaction such as this, where the legislation is for the protection of the public, the actor cannot claim ignorance or mistake of fact to exculpate himself from a situation where there was a known measure of wrong, as is the case in the selling of narcotics. *United States* v. *Balint,* 258 U.S. 250, 251, 42 S. Ct. 301, 66 L. Ed. 604, approved in *Morissette* v. *United States,* 342 U.S. 246, 260, 72 S. Ct. 240, 96 L. Ed. 288; *Welch* v. *State,* 145 Wis. 86, 129 N.W. 656. In this regard we are also guided by the well-established rule that lack of

knowledge is not a defense to a charge of carnally knowing a female under the age of consent. *Commonwealth* v. *Murphy*, 165 Mass. 66, 42 N.E. 504; 44 Am. Jur., Rape, § 41. It would be impractical, as well as illogical, to require the state to prove that a seller of narcotics knew his customer to be under twenty-one years of age. The purpose of the statute, to give added protection to minors, would be unjustifiably encumbered by such a holding. See *State* v. *Katz*, 122 Conn. 439, 442, 189 A. 606.

Neither the argument that the purchase of narcotics was made by the police with Arsenault acting merely as an agent nor the argument that the defendant was entrapped by the police into selling to a minor is persuasive. The record makes it clear that Arsenault was found with narcotics paraphernalia in his possession and readily admitted that he was a user of heroin. On the basis of these circumstances, the police asked him to make a purchase of heroin under their surveillance. The police had no interest in acquiring heroin, and it cannot be maintained that Arsenault was solicited to do any more than the record demonstrates, that is, to make a purchase on his own behalf under the surveillance of the police.

Entrapment cannot be successfully relied on as a defense unless the criminal design arose solely in the mind of the police. *State* v. *Marquardt*, 139 Conn. 1, 5, 89 A.2d 219. A predisposition to commit the crime, which is triggered by circumstances created by, or under the control of, the police, does not set the stage for the defense of entrapment. Or, as we said in *Marquardt* (p. 5): "[I]f the criminal intent or the willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the oppor-

tunity is furnished or the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him for it constitutes no defense." The facts of the instant case fall within this rule and support a conclusion that the defendant was disposed to sell to any customer, whether a minor or not, without police inducement.[3] The defense of entrapment raises a question of fact, and, where there is a claim of entrapment, the issue must be resolved by the trier, which was done in this case. *United States* v. *Pisano,* supra, 361.

The defendant has cited the rule that a guilty plea entered by one defendant cannot be used to prove the guilt of an accomplice. *State* v. *Pikul,* 150 Conn. 195, 198, 187 A.2d 442; *State* v. *Loughlin,* 149 Conn. 21, 26, 175 A.2d 367. In the present case, however, the record demonstrates that the court took judicial notice of the guilty plea of Arsenault not for the purpose of proving the defendant's guilt but rather to show the circumstances under which Arsenault agreed to cooperate with the police. This guilty plea was to a charge based on facts totally unrelated to those involved in the information against the defendant. Cf. *State* v. *Pikul,* supra. There can be no question of the court's power to take judicial notice of a guilty plea entered in another case before the same court, so long as it is not used for an improper purpose. *State* v. *Lenihan,*

---

[3] In this connection it should be noted that the defendant and Arsenault were not strangers, as shown from a portion of the testimony of Arsenault: "Q.—Do you know this accused? A.—Yes, I know Sam and Joe. Q.—You know both of them? A.—Yes. Q.—You know their names? A.—Sam Taylor and Joe Gauze. . . . Q.—On the evening of January 30th will you tell us whether or not you made any telephone call. A.—Yes. . . . Q.—And who did you call? A.—I called Sam Taylor. Q.—Is that the first time you ever called Sam Taylor? A.—No. I called him a few times before."

151 Conn. 552, 200 A.2d 476. The record discloses no such improper use in the present case.

There is no merit in the contention of the defendant that he was deprived of a fair trial because the court received the jury verdict of guilty in the companion case before rendering its decision. The court and the jury have different areas of responsibility, and it is well within the province of the court, in fulfilling its judicial obligations, to accept a jury verdict in a criminal case before rendering judgment in the case of a codefendant who has elected trial to the court.

This court is not bound to consider claims of law not made at the trial. *Harry* v. *Bidwell,* 149 Conn. 93, 98, 175 A.2d 704. This rule applies to criminal as well as civil cases. *State* v. *Sul,* 146 Conn. 78, 81, 147 A.2d 686. While it is true that we have applied this rule with some flexibility in capital cases, such as in *State* v. *Walters,* 145 Conn. 60, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45, and *State* v. *Reid,* 146 Conn. 227, 149 A.2d 698, this policy does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal. Under such a procedure (1) claims of error would be predicated on matters never called to the attention of the trial court and upon which it necessarily could have made no ruling in the true sense of the word; and (2) the appellee, here the state, would be lured into a course of conduct at the trial which it might have altered if it had any inkling that the accused would, in the event of a conviction, claim that such a course of

conduct involved rulings which were erroneous and prejudicial to him. See cases such as *State* v. *De-Gennaro,* 147 Conn. 296, 304, 160 A.2d 480.

The defendant claims that upon all the evidence his guilt was not proved beyond a reasonable doubt. This claim is, of course, reviewed upon the evidence rather than the finding. *State* v. *Pundy,* 147 Conn. 7, 8, 156 A.2d 193. There was evidence of the following: Edmund Arsenault, a minor, was arrested on the afternoon of January 30, 1958, and was charged with illegal possession of narcotics. That evening Arsenault agreed to assist the police in apprehending the person who had been his source of narcotics. Pursuant to a plan devised by the police, Arsenault was returned to his home at 69 Harriet Street in Bridgeport. There, he dialed a telephone number taken from a piece of paper in his wallet, a woman answered, and Arsenault asked for Sam. When he was told that Sam was not there, Arsenault called the Eden Grille and talked with a man whom he identified as Sam Taylor. He was able to make this identification because he had talked with Sam Taylor on the telephone on prior occasions. Arsenault stated that he wanted to buy a bag of heroin and asked Taylor if he had any. Following this telephone call, Arsenault, carrying a marked five-dollar bill, which was given him by the police, left his house and walked south on Harriet Street. One police officer watched him from the front steps of Arsenault's house, and some other officers watched him from a parked covered truck. Arsenault had agreed with the police that when he purchased the heroin he would throw a cigarette to the ground. Arsenault proceeded to the corner of Harriet Street and Crescent Avenue which was illuminated by a street light and two thirty-watt fluorescent lights in

the display windows of the Radio Hospital on the
northwest corner of Crescent Avenue and Harriet
Street. About one-half hour after Arsenault reached
the corner, he was approached by two men, whom the
police recognized as Sam Taylor and Joseph Gauze.
The men paused for a moment by Arsenault, then
continued into an alley next to the Radio Hospital.
Within forty seconds they reappeared from the alley
and again approached Arsenault single file with
Taylor in the lead. When Taylor met Arsenault he
continued on past him. When Gauze met Arsenault
he stopped, turned and walked with Arsenault back
in the direction from which he had just come. Gauze
handed something which he had in his left hand to
Arsenault, who removed his right hand from his
pocket and placed something in the right hand of
Gauze. At this point, Arsenault dropped his ciga-
rette, the police secreted in the truck jumped out,
and Taylor and Gauze fled from the scene. Arse-
nault ran to Captain Francis J. Shanley, a police
officer, shouting, "I got it Lieutenant," and handed
him a glassine packet later shown to contain heroin.
Taylor and Gauze were soon apprehended in the
Eden Grille. The marked five-dollar bill was not
recovered.

The state's principal witness, Arsenault, testified
that he was a user of narcotics, that he entered into
a plan with the police to make a purchase of heroin
and that this transaction was executed between him-
self, as buyer, and the defendants, Taylor and
Gauze, as sellers. Specifically, Arsenault testified
that he placed his order over the telephone with
Taylor and shortly thereafter met Taylor and Gauze
on the street near his house, where, after a brief
interlude during which Taylor and Gauze disap-
peared behind a nearby building, Arsenault handed

Gauze five dollars in exchange for a packet of heroin. Members of the Bridgeport police department, according to the plan, kept Arsenault under surveillance during the entire proceedings, and their testimony at the trial served to corroborate that of Arsenault. There was sufficient evidence from which the court could conclude beyond a reasonable doubt that Taylor aided and abetted Gauze in the sale of narcotics to Arsenault, a minor, in violation of § 19-267 of the General Statutes.

There is no error.

In this opinion the other judges concurred.