GLENN CHAFFER, INC. *v.* RICHARD KENNEDY

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1019

Argued December 16, 1980 — decided April 17, 1981

*Robert M. Panisch,* for the appellant (plaintiff).

*Steven G. Berg,* for the appellee (defendant).

BIELUCH, J. The plaintiff in this summary process action is a corporation which is in the process of converting the apartment building in which the defendant resides to a condominium. On September 29, 1979, the president of the corporation left notice of the intended conversion at the door of the defendant's apartment. The defendant was traveling abroad at the time and did not receive the notice personally. On April 28, 1980, the plaintiff served the defendant with notice to quit, preliminary to commencing this summary process action. The defendant moved to dismiss on the ground that the court lacked jurisdiction because the notice of intended condominium conversion was defective under General Statutes § 47-88b (b).[1] The court granted the motion to dismiss and the plaintiff has appealed.

In its appeal the plaintiff raises three issues: (1) whether the delivery of notice of condominium conversion to the defendant's apartment door complied with the requirement of hand delivery in General

[1] Prior to October 1, 1979, General Statutes § 47-88b (b) provided: "In the case of a conversion condominium, the landlord or developer shall give at least sixty days notice to each of the tenants of the building or buildings which are to be submitted to the provisions of this chapter. Such notice shall be hand delivered or sent by certified mail, return receipt requested, and shall inform tenants of the owner's intent to create a conversion condominium. During the first thirty days of such sixty-day period each of the said tenants shall have the exclusive right to contract for the purchase of the unit he occupies. Any tenants who do not exercise said option shall be entitled to remain in the premises under their existing leases, subject to all the terms and conditions contained therein, except that upon the filing of the declaration said lease shall be considered assigned to the declarant."

Statutes § 47-88b (b); (2) whether, in the event that there was a technical defect in the delivery of notice, actual notice was sufficient; and (3) whether General Statutes § 47-88b (b) applies where there is no written lease, but a month-to-month tenancy.

I

The requirement for notice to the tenant of a condominium conversion is found in General Statutes § 47-88b (b). On September 29, 1979, and prior to October 1, 1979, this provision required only sixty days' notice of the intended condominium conversion. This notice is required to be "hand delivered" or sent by "certified mail, return receipt requested." This statute was amended, as of October 1, 1979, by Public Acts 1979, No. 79-622, to require one hundred and eighty days' notice of the conversion. If the plaintiff's notice to the defendant was adequate, he would have come within the former provision, requiring only sixty days' notice. The issue is whether the term "hand delivered" requires delivery to be made personally to each tenant. We agree with the trial court that it does.

The plaintiff argues that because the legislature used the term "hand delivered" as opposed to "in the hands of," delivery by hand to the apartment door was sufficient. Any ambiguity in § 47-88b (b), however, is eliminated by § 47-88b (e).[2] This latter section requires that the declarant of a conversion condominium file a certified statement that the notice required by § 47-88b (b) was "mailed or delivered to each of the tenants in the building or buildings to be

---

[2] Prior to October 1, 1979, General Statutes § 47-88b (e) provided: "The declarant of a conversion condominium shall, in addition to the requirements of subsection (a) of this section include with the condominium instruments a copy of the notice set forth in subsection (b) and a certified statement that such notice, fully complying with the provisions of subsection (b), shall be, at the time of the recording of the declaration of condominium, mailed or delivered to each of the tenants in the building or buildings to be converted."

converted." The use of the term "tenants" there indicates an intent by the legislature to have the delivery made personally to the occupant of the unit. "The intention of the legislature, expressed in the language it uses, is the controlling factor . . . ." *United Aircraft Corporation* v. *Fusari*, 163 Conn. 401, 410, 311 A.2d 65 (1972). "Statutory language is to be given its plain and ordinary meaning unless such meaning is clearly at odds with the legislative intent." *State* v. *Taylor*, 153 Conn. 72, 82, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966). In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language. General Statutes § 1-1 (a).

Another indication of the legislature's intent is found in the fact that in the Connecticut statute the terms "hand delivered" and "sent by certified mail, return receipt requested," have been used, rather than the terms "hand-delivered to the unit" and "mailed by prepaid United States mail" found in the Uniform Condominium Act.[3] This deliberate choice of language is evidence of a legislative intent to make the notice requirements more stringent than they were in the model act. The elimination of the phrase "to the unit" and the addition of the requirement of

---

[3] The Uniform Condominium Act (1978) § 4-110 (current version [1981] at § 4-112) provides: "(a) A declarant of a conversion condominium shall give each of the tenants and any subtenant in possession of buildings subject to this Act notice of the conversion no later than 120 days before the declarant will require the tenants and any subtenant in possession to vacate. The notice must set forth generally the rights of tenants and subtenants under this section and shall be hand-delivered *to the unit* or mailed by prepaid United States mail *to the tenant and subtenant at the address of the unit or any other mailing address provided by a tenant*. No tenant or subtenant may be required by the declarant to vacate upon less than 120 days notice, except by reason of nonpayment of rent, waste, or conduct that disturbs other tenants' peaceful enjoyment of the premises, and the terms of the tenancy may not be altered during that period. Failure of a declarant to give notice as required by this section is a defense to an action for possession."

certification that the notice was delivered to the tenants indicate that personal receipt is required.

## II

During the trial, evidence was presented that the defendant received actual notice of the condominium conversion during October, 1979. The plaintiff contends that even if there was a technical defect in the notice given, the defendant's actual knowledge of the conversion could be substituted for the statutorily described notice. We disagree. Compliance with the statutory procedure for notice is a prerequisite to any valid and effective action under the statute. *Aurora* v. *Zoning Board of Appeals,* 153 Conn. 623, 625, 220 A.2d 277 (1966). "Where a specified mode of giving notice is prescribed by statute, that method is exclusive." 58 Am. Jur. 2d, Notice § 22; *State* v. *Baltromitis,* 5 Conn. Cir. Ct. 72, 77, 242 A.2d 99 (1967). Generally, where notification is required for some definitive purpose, and where valuable interests of the addressee are being destroyed, strict adherence to the prescribed procedure is required. 1 Merrill, Notice § 509.

The service of proper statutory notice to the tenant under § 47-88b (b) affects the tenant's interest in the leased premises by limiting or triggering certain rights given him under the condominium act. Under the law, as then written, the tenant had the exclusive right to contract for the purchase of his unit. Upon the failure to exercise such option, he was entitled to remain on the premises under the existing lease. Therefore, it is essential that the statutory formalities of serving notice be observed so that the tenant's rights will be established in fact and limited in time.[4]

---

[4] During the discussion of Public Acts 1979, No. 79-622, in the House the following dialogue took place, 22 H. R. Proc., Pt. 28, 1979 Sess., pp. 9842–9843:

"REP. EMMONS: (101st) Rep. Tulisano, does this time span start as soon as you've notified a tenant that your 90 days or 180 days or 365 days will begin at that time?

DEPUTY SPEAKER COATSWORTH: Rep. Tulisano.

## III

The plaintiff's final argument is that the notice requirement of § 47-88b (b) is not a valid defense to a summary process action in the case of a month-to-month tenancy. This contention has no merit. The plaintiff cites § 47-88b (f)[5], which prohibited eviction

REP. TULISANO: (29th) Mr. Speaker, it says notice – [what] I presume is that when they've received the notice [it] would start running immediately upon receipt thereof.

REP. EMMONS: (101st) Thank you. Mr. Speaker, one further question. If you have a lease with your landlord and you, say, have a two-year lease, can they break it to convert to a condominium, or can they only evict you, so to speak, once your lease had ended?

REP. TULISANO: (29th) Through you, Mr. Speaker.

DEPUTY SPEAKER COATSWORTH: Rep. Tulisano.

REP. TULISANO: (29th) If one has a lease on the property, that lease would continue in existence even though there may be conversion. The ownership might change in effect, but the lease would be consistent. You couldn't convert someone out of their lease, if that's what you really wanted to know."

[5] Prior to October 1, 1979, General Statutes § 47-88b (f) provided: "(f) No eviction proceedings shall be brought against any of the occupants resident in any building or group of buildings converted to condominium ownership pursuant to this section within the term of any existing lease for failure to purchase or any other reasons applicable to termination of tenancy other than nonpayment of rent or similar justifiable reasons ordinary to landlord rights where a written lease exists assuring quiet enjoyment."

This was amended by Public Acts 1979, No. 79-622, and Public Acts 1980, No. 80-370, to read: "(f) Eviction prohibited. No eviction proceedings shall be brought against any of the occupants resident in any building or group of buildings converted to condominium ownership pursuant to this section within the term of any existing lease or within the one hundred eighty-day period provided for under subsection (c), whichever is later, for failure to purchase or any other reasons applicable to termination of tenancy other than nonpayment of rent or similar justifiable reasons ordinary to landlord rights where a lease exists assuring quiet enjoyment."

This amendment, in which the notice period is increased to 180 days, makes it clear that all tenants are entitled to the 180-day notice even if they have an existing lease which expires before the 180 days have passed.

Public Acts 1980, No. 80-370, also amended § 47-88b (b) by providing that the tenant may abandon the apartment after receiving notice without liability for early termination of his lease and also that he may extend any lease expiring during the notice period to the end of such period. These

"within the term of any existing lease for failure to purchase." This provision served to ensure that tenants with a lease which extended beyond the sixty-day period could not be evicted before the lease expired. In no way, however, does it contradict the notice provision of § 47-88b (b) which entitles "each of the tenants" to a sixty-day notice of the condominium conversion. We have already ruled that proper statutory notice of the intended conversion was not given in this case. Therefore, no grounds for eviction under § 47a-23[6] existed.

There is no error.

In this opinion SHEA and DALY, Js., concurred.

---

amendments merely clarify the original intention of the legislature. See *Wiegand* v. *Heffernan,* 170 Conn. 567, 575, 368 A.2d 103 (1976); *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 623, 363 A.2d 1038 (1975).

[6] On April 28, 1980, when this summary process action was commenced, General Statutes § 47a-23 provided: "When a lease of any land or building or of any apartment in any building, or of any dwelling unit, or of any trailer, or any land upon which a trailer is used or stands, whether in writing or by parol, terminates by lapse of time, or by reason of any expressed stipulation therein, or under the provisions of section 47a-15a, or as a result of a violation of section 47a-11, or where such premises, or any part thereof, is occupied by one who has no right or privilege to occupy such premises, or where one originally had the right or privilege to occupy such premises but such right or privilege has terminated, and the owner or lessor, or his legal representatives, or his attorney-at-law, or in-fact, desires to obtain possession or occupancy of the same, at the termination of the rental agreement or lease, if any, or at any subsequent time, he or they shall give notice to the lessee or occupant to quit possession of such land, building, apartment or dwelling unit, at least eight days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy, except when such lease, if any, has been terminated by reason of nonpayment of rent, in which case such notice shall be given at least five days before the time specified in the notice for the lessee to quit possession or occupancy. . . ."